# EXHIBIT 2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| JUDY HALCOM, HUGH PENSON, HAROLD CHERRY, and RICHARD LANDINO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY, and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendants. | Civil Action No. 3:21-cv-00019-REP<br><br><u>CLASS ACTION</u> |

**DECLARATION OF RODNEY A. MAX**

I, RODNEY A. MAX, declare pursuant to 28 U.S.C. §1746 as follows:

1. My name is Rodney A. Max. I am over the age of 18 and I am competent to give testimony. The statements contained herein are based upon my own personal knowledge and are true and correct.

2. I submit this Declaration in my capacity as the mediator in connection with the proposed settlement of this case. While the mediation process is confidential, the parties have authorized me to inform the Court of the procedural and substantive matters set forth herein in support of approval of the Settlement. My statements and those of the parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my part or the parties' part to waive the agreement or the protections of Rule 408. I make this Declaration based on personal knowledge and am competent to so testify.

## II. BACKGROUND AND EXPERIENCE

3. I graduated in 1975 *cum laude* from the Cumberland School of Law. Upon graduation, I became licensed to practice law in the state of Alabama (1975) and the state of Florida (1976). I am currently a member of Upchurch, Watson, White & Max Mediation Group, Inc.

4. Since 1992, my practice has focused exclusively on alternative dispute resolution, with an emphasis on mediation.

5. I have national mediation experience and have mediated in 34 states and the District of Columbia. I have been selected to conduct mediations by leading plaintiffs' attorneys, defense counsel, and in-house counsel for national and international manufacturers, distributors, transporters, insurers, and service-provider companies and have been appointed by federal and state judges from coast to coast.

6. I have mediated cases involving alleged consumer fraud, wrongful death and personal injury, breach of contract, bad faith, securities (NASD), antitrust, patent and trademark,

Lanham Act, construction, property, environmental, fraud and suppression, banking, estate, and trusts, stockholder disputes, partnership disputes, and shareholder derivative claims. I have mediated numerous national and statewide class actions as well as numerous mass tort, contract and statutory warranty cases. I have convened parties for mediation before suits have been filed, as well as mediated cases on appeal.

7. Over the course of my career, I have conducted well over 5,000 mediations involving over 10,000 cases.

8. I am a Past-President of the American College of Civil Trial Mediators. Additionally, I am a member of the Alabama Center of Dispute Resolution, the Florida Academy of Professional Mediators, and the Dispute Resolution Section of the American Bar Association.

9. I have played a major role in establishing rules, standards, and ethics for mediators. I initiated the Mediation Process and Practice Program at Cumberland School of Law as an adjunct professor from 1997-2002. Additionally, I have lectured at CLE seminars for attorneys or those who have sought training on mediation at the following courses:

- American College of Attorney Mediators – Multi Party Mediation, The Business of Mediation;
- American Bar Association Dispute Resolution Section – Multi Party Mediation, Ethics of Mediation, The Business of Mediation;
- New Jersey Bar Association – The Practice of Mediation;
- Alabama Bar Association – Multi Party Mediation; Mediation Dissected;
- Florida Academy of Civil Trial Mediators – Opening Statements;
- University of Florida – Designing The Mediation; and
- The International Academy of Mediators – Ethics of Mediation.

10. I have also published a number of articles on alternative dispute resolution. The following abridged list is a sampling: *Mediation Comes of Age*, published in *The American*

*Journal of Trial Advocacy*, Volume 23, Issue 3 (Spring 2000); *Multiparty Mediation*, published in *The American Journal of Trial Advocacy*, Volume 23, Issue 2 (Fall 1999); *Designing The Mediation*, presented at professional seminars; *The Ethical Civil Trial Mediator, The Letter, The Spirit and The Practice*, presented at professional seminars; and *Mediation: The Humanization of the Justice System*, presented at professional seminars.

### III. FAMILIARITY WITH THE PRESENT LITIGATION

11. I am familiar with the parties and issues in this matter as I was the mediator that assisted them in resolving a similar case, *Skochin v. Genworth*, in the fall of 2019.

12. After filing suit in the *Halcom v. Genworth* matter, the parties reached out to me again. We schedule a two-day mediation session on my first available opening thereafter, which was June 17th and 18th.

13. In my capacity as mediator, I consider myself to be a neutral, representing neither plaintiff nor defendant.

14. In preparing for this mediation, I asked that the parties to provide me with a variety of information about the lawsuit. Additionally, I had pre-mediation discussions with the parties to learn more about the facts giving rise to this dispute, the procedural background of the lawsuit, and the positions of the parties. The purpose of these initial conferences was to organize the parties' efforts to fully resolve this matter and for me to learn what similarities and differences there were between this matter and the prior *Skochin* case.

15. The parties met with me for mediation on June 17th and 18th at the offices of Dentons in New York, NY.

16. While the parties had negotiated the settlement of a similar claim with me in 2019, this mediation dealt with several new issues, in part because the policies at issue in this matter were the subject of separate rate actions with regulators and those actions were based on separate

actuarial justifications and related issues. The parties also had at their disposal claims data from the *Skochin* litigation that presented advantages and challenges to both parties as they negotiated the potential terms of a settlement in the *Halcom* matter.

17. From the outset, it was apparent to me that both sides possessed strong, non-frivolous arguments, and that neither side was assured of victory if the case was litigated to final judgment. Nevertheless, the parties' sophistication, skill, dedication, and honest desire to try to reach an amicable resolution enabled them, with my assistance, to work through the difficult issues and, eventually, find common ground.

18. Because the parties discussed with me their legal and factual arguments in the context of a confidential mediation process pursuant to Rule 408, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of much hard work, and they were complex and highly adversarial.

19. After discussing the parties' position separately prior to the first mediation session and then during the course of the mediation, I believed that the negotiations would be difficult and adversarial and that all involved would hold strong to their convictions that they had the better legal and substantive arguments, and that a resolution without further litigation or trial was by no means certain.

20. The first day of mediation concluded with the parties having made substantial progress on a general framework for a negotiated resolution, with many key terms resolved. On the second day, the parties returned to the task and spent the entire day working extremely hard on their internal deliberations and face-to-face negotiations, which at times were challenging, but ultimately were successful.

21. The parties ended the second day with an executed Memorandum of Understanding, setting forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's approval.

22. A review of my records shows that, in total, I personally spent in excess of 25.50 hours coordinating, preparing, pre-mediating and mediating the resolution of this case.

23. Based on my experience as a litigator and a mediator for over 30 years, I came away from the mediation process in this case with two thoughts. First, I firmly believe that this settlement represents a reasonable and fair outcome for the Class given the parties' strongly-held positions throughout negotiations. As such, I strongly support the approval of the settlement in all respects. Second, the advocacy on both sides of the case was outstanding. Plaintiffs' counsel, Brian Penny, Stuart Davidson and Glen Abramson, and Genworth's counsel, Reid Ashinoff, Michael Duval, Drew Marrocco, Catharine Luo, and Greg Karawan (General Counsel and Head of Global Litigation at Genworth), represented their clients with tremendous effort, creativity, and zeal.

24. All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients and the settlement is the direct result of all counsel's experience, reputation, and ability in complex class actions including the multifaceted field of insurance. To be sure, it was only upon reaching an agreement on the substantive terms of a settlement and Class member relief that further and reasonable consideration was given to a reasonable an appropriate amount of Plaintiffs' counsel's attorneys' fees, Plaintiffs' counsels out-of-pocket costs incurred in prosecuting this case, and Plaintiffs' incentive awards, all of which the parties understood were subject to Court approval.

25. Should the Court have any questions of me or require any additional information regarding the parties' negotiations of the proposed Settlement, I am happy to answer and provide the same.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct and that this declaration was executed this 12th day of August, 2021.

_____
RODNEY A. MAX