# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JUDY HALCOM, HUGH PENSON, HAROLD CHERRY, and RICHARD LANDINO,** *individually and on behalf of all others similarly situated*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,** <br><br> **Defendants.** | **Civil Action No.:  3:21-CV-00019-REP** |

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE**

# **TABLE OF CONTENTS**

Page

I. RECITALS ...................................................................................................................1

II.  DEFINITIONS ...........................................................................................................3

III. TERMS OF SETTLEMENT ......................................................................................8

| 41. | Class Certification..........................................................................8 |
| 42. | Consideration to Class ...................................................................9 |
| 43. | Mailing of the Special Election Letter(s)......................................11 |
| 44. | Return of the Special Election Letter(s)........................................12 |
| 45. | State Regulatory Review and Conflict Carve-Out.........................13 |
| 46. | Release by Named Plaintiffs and the Class....................................15 |
| 47. | Covenant Not to Sue by Named Plaintiffs and the Class................16 |
| 48. | Release by Genworth. ....................................................................17 |
| 49. | No Admission Of Liability. ...........................................................17 |
| 50. | Potential Tax and Partnership Plan Consequences .........................17 |
| 51. | Payment of Class Counsel's Attorneys' Fees ................................18 |
| 52. | Payment of Class Counsel's Reasonable Expenses ........................18 |
| 53. | Named Plaintiffs' Service Payments .............................................19 |
| 54. | Non-Disparagement, Confidentiality, and Public Statements .........19 |
| 55. | Settlement Administrator ...............................................................21 |
| 56. | Class Notice ..................................................................................21 |
| 57. | Websites........................................................................................21 |
| 58. | Requests for Exclusion. .................................................................22 |
| 59. | Termination...................................................................................22 |
| 60. | Objections. ....................................................................................23 |
| 61. | Special Election Letter and Option Questions................................23 |
| 62. | Audit by Settlement Administrator ................................................23 |
| 63. | Defendants' Representations .........................................................25 |
| 64. | Calculation of Deadlines. ..............................................................26 |
| 65. | Enforceability. ..............................................................................26 |
| 66. | Mutual Full Cooperation ...............................................................26 |
| 67. | No Prior Assignments. ..................................................................26 |

i

68.     Construction and Choice of Law. ........................................................................26

69.     Modification.........................................................................................................27

70.     Notice ..................................................................................................................27

71.     Entire Agreement. ...............................................................................................28

72.     Counterparts. .......................................................................................................28

73.     Representations ...................................................................................................28

APPENDIX A .....................................................................................................................33

APPENDIX B .....................................................................................................................42

APPENDIX C .....................................................................................................................44

APPENDIX D .....................................................................................................................50

APPENDIX E .....................................................................................................................61

APPENDIX F .....................................................................................................................79

This Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement") is made and entered into by and between Judy Halcom, Hugh Penson, Harold Cherry, and Richard Landino ("Named Plaintiffs"), on behalf of themselves and the putative class of individuals defined in this Settlement Agreement (collectively Plaintiffs), on the one hand, and Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (together, GLIC and GLICNY, "Genworth" or "Defendants"), on the other hand. Collectively, Plaintiffs and Defendants are referred to herein as the "Parties," and individually, each as a "Party." Subject to Court approval as required by Federal Rule of Civil Procedure ("FRCP") 23, the Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Settlement Agreement and upon entry by the Court of a Final Order and Judgment and resolution of any appeals from that Final Order and Judgment, this action shall be settled and compromised in accordance with the terms of this Settlement Agreement.

## I.   RECITALS

1.      WHEREAS, on January 11, 2021, Named Plaintiffs filed a complaint (the "Complaint") against Defendants for alleged misrepresentations based on the alleged failure to disclose material information in the premium rate increase letters sent for certain long-term care insurance policies issued by GLIC and GLICNY in the action styled as *Halcom et al. v. Genworth Life Insurance Company et al.*, Civil Action No. 3:21-CV-00019-REP in the United States District Court of the Eastern District of Virginia (the "Action"). Named Plaintiffs sought to represent a class of all Policyholders (defined below) who had received such letters in all fifty states and the District of Columbia, and Named Plaintiffs asserted claims for Fraudulent Inducement by Omission and for Declaratory Relief;

1

2.      WHEREAS, Named Plaintiffs sought relief including compensatory, consequential, and general damages in an amount to be determined at trial, injunctive relief, costs and disbursements of the action, pre- and post-judgment interest, reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper;

3.      WHEREAS, on or about March 15, 2021, Defendants filed an Answer to the Complaint denying that Named Plaintiffs are entitled to any of the relief sought in the Complaint and asserted affirmative and other defenses to the Complaint;

4.      WHEREAS, the Parties have engaged in significant discovery relating to Named Plaintiffs' claims;

5.      WHEREAS, Genworth denies and continues to deny any wrongdoing or legal liability for any alleged wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or legal liability in connection with any facts or claims that have been or could have been alleged in the Action, and contends that neither Named Plaintiffs nor the putative classes have been injured or are entitled to any relief;

6.      WHEREAS, Genworth denies that this case is suitable for class treatment other than in the context of a settlement or that Named Plaintiffs would be able to demonstrate on a contested motion that any non-settlement class should be certified;

7.      WHEREAS, Named Plaintiffs believe all the claims alleged in the Action have merit and that the Action would be certified as a class action for trial under FRCP 23(b)(2) and (b)(3);

8.      WHEREAS, the Parties have engaged in significant settlement efforts including two days of in-person mediation sessions with an experienced and highly qualified mediator, and engaged in numerous additional discussions through counsel, and this Settlement Agreement is a result of those significant, arms-length negotiations;

9.     WHEREAS, the Parties reached this Settlement Agreement as a compromise of the disputed matters described herein and due to the uncertainties, risks, expenses, and business disruptions of continued litigation;

10.     WHEREAS, on June 18, 2021, the Parties entered into a Memorandum of Understanding for Class-Action Settlement (the "Memorandum of Understanding");

11.     WHEREAS, on June 23, 2021, the Parties advised the Court that they had mediated their dispute and reached agreement on the terms of a Memorandum of Understanding;

12.     WHEREAS, on July 2, 2021, the Parties attended a joint teleconference with the Court to discuss the proposed settlement and schedule for seeking Court approval of the settlement;

13.     WHEREAS, this Settlement Agreement supersedes and replaces the Memorandum of Understanding;

14.     WHEREAS, nothing in the Memorandum of Understanding, this Settlement Agreement, or in the settlement process should be construed as an admission of any liability fault, or wrongdoing by Genworth; and

15.     WHEREAS, the Parties have agreed that the Settlement Agreement is fair, reasonable, and adequate, and in the best interests of Named Plaintiffs and the Class (defined below), and have agreed to settle the Action taking into account the strengths and weaknesses of their respective claims and defenses and the risks of uncertainty absent settlement;

NOW THEREFORE, in consideration of the foregoing facts and of the agreements and consideration set forth below, the Parties mutually agree as follows:

## II.  DEFINITIONS

16.     Class Counsel: "Class Counsel" shall be defined as Goldman Scarlato & Penny, P.C., Robbins Geller Rudman & Dowd LLP, Berger Montague PC, and Phelan Petty P.C.

17.     Class Notice: "Class Notice" means Court directed appropriate notice pursuant to FRCP 23(e), the form of which is in Appendix E.

18.     Class or Class Members: "Class" or "Class Members" shall be defined as all Policyholders of GLIC and GLICNY long-term care insurance PCS I and PCS II Class Policies, and State variations of those Class Policies in force at any time during the Class Period and issued in any of the States[1]  excluding: (1) those Policyholders whose policies went into Non-Forfeiture Status or entered a Fully Paid-Up Status prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated, as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter (defined below) would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time before their signed Special Election Option is post-marked for mailing to Genworth, or is faxed or emailed to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff.

19.     Class Period: The "Class Period" means any time on or between January 1, 2012 and the date the Class Notice is mailed.

20.     Class Policies: "Class Policies" means Genworth long-term care insurance policies, or, for group policies, certificate forms identified in Appendix A to this Settlement

---

[1]  The complete list of the Class Policy forms that are included within the definition of Class is attached hereto as **Appendix A**.

4

Agreement in force at any time during the Class Period and issued in any of the fifty (50) states of the United States or the District of Columbia (the "States").

21. <u>Court</u>: "Court" means the United States District Court for the Eastern District of Virginia.

22. <u>Fee Award</u>: "Fee Award" means the attorneys' fees, costs, and/or expenses approved and awarded by the Court to Class Counsel, not to exceed the amounts stated in paragraphs 51 and 52 below.

23. <u>Final Approval Hearing</u>: "Final Approval Hearing" means the hearing at or after which the Court will consider the Parties' positions and make its decision whether to finally approve the settlement as fair, reasonable, and adequate under FRCP 23(e)(2).

24. <u>Final Fee Award</u>: "Final Fee Award" means the date on which the Fee Award becomes "Final." For purposes of this provision: (1) if no appeal has been taken from the Fee Award, "Final" means that the time to appeal or seek any review therefrom has expired; or (2) if there is either an appeal or review of the Fee Award, "Final" means that all available appeals or review, including any petition for rehearing or reargument, petition for rehearing *en banc*, further appeals at any level, petition for certiorari, or any other form of review, have been fully disposed.

25. <u>Final Order and Judgment</u>: "Final Order and Judgment" means the order issued by the Court finally approving the Settlement Agreement in all material respects together with the judgment entered pursuant to that order after the Final Approval Hearing.

26. <u>Final Settlement Date</u>: "Final Settlement Date" means the date on which the Final Order and Judgment becomes "Final." For purposes of this provision: (1) if no appeal has been taken from the Final Order and Judgment, "Final" means that the time to appeal or seek any review therefrom has expired; or (2) if any appeal or review has been taken from the Final Order and Judgment, "Final" means that all available appeals or review therefrom, including any

petition for rehearing or reargument, petition for rehearing *en banc*, further appeals at any level, petition for certiorari, or any other form of review, have been finally disposed of in a manner that fully affirms the Final Order and Judgment.

27.    <u>Fully Paid-Up Status</u>: "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed. A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.

28.    <u>Genworth Released Parties</u>: "Genworth Released Parties" means Defendants and each of Defendants' respective affiliates, predecessors, successors, parents, subsidiaries, and, for each of the foregoing, their current, former, and future directors, officers, direct and indirect owners, members, managers, attorneys, representatives, employees, and agents.

29.    <u>Lapse or Lapsed</u>: "Lapse" or "lapsed" means a status whereby a policy is no longer in force because premium was not paid as required. A lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium. For purposes of this Agreement, a policy in Non-Forfeiture Status is not a lapsed policy.

30.    <u>Lifetime Stable Premium Option or LSPO</u>: "Lifetime Stable Premium Option" or "LSPO" means an option that allows Class Members to adjust their coverage to mitigate current and/or planned future rate increases and includes a new set premium rate that will not increase for the lifetime of their policies.

31.    <u>Non-Forfeiture Status</u>: "Non-Forfeiture Status" means a policy status where the Policyholder has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option;

6

the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

32.     <u>Partnership Plan</u>: "Partnership Plan" means the Long-Term Care Partnership Program, which is part of a federally-supported, state-operated initiative that allows individuals who purchase qualified long term care insurance policies or coverage to protect a portion of assets that they would typically need to spend down prior to qualifying for Medicaid coverage.

33.     <u>Policyholder(s)</u>: "Policyholder(s)" means the policy owner, except:

(a)     where a single policy or certificate insures both a policy or certificate owner and another insured person, "Policyholder(s)" means both the policy or certificate owner and the other insured person jointly;

(b)     where the Class Policy at issue is certificate 7000X, 7020X, 7000Y, 7030CRT, 7031CRT, or 7032CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

34.     <u>Publication Notice</u>: "Publication Notice" means the notice of the Settlement Agreement recommended by the Settlement Administrator, subject to approval from the Parties, to be published on one business day in the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*, no later than fifteen (15) days before the deadline for submitting Requests for Exclusion (defined below) from the Class in the form attached hereto as Appendix F.

35.     <u>Quarter(s)</u>: "Quarters" mean the following time periods within a calendar year, (where each time period is one "Quarter"): January 1 to March 31, April 1 to June 30, July 1 to September 30, and October 1 to December 31.

36.     <u>Stable Premium Option or SPO</u>: "Stable Premium Option" or "SPO" means an option that allows Class Members to adjust their coverage to mitigate current and/or planned

future rate increases and includes a new set premium rate that will not increase until at least January 1, 2028.

37.     <u>States</u>: "States" means the fifty (50) States of the United States and the District of Columbia.

38.     <u>State Regulator(s)</u>: "State Regulator(s)" means the applicable insurance regulator(s) with authority for regulating long-term care insurance products in the State(s) in which Class Members' Class Policies were issued.

39.     <u>Terminated</u>: "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium. It includes, for example, a Class Policy that has lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.

40.     Other capitalized terms used in this Settlement Agreement but not defined in Section II shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

### III.   TERMS OF SETTLEMENT

41.     <u>Class Certification</u>:

(a)     For purposes of settlement only, Genworth will not oppose Named Plaintiffs' motion seeking certification of the Class under FRCP 23(b)(3) and 23(e). Genworth expressly reserves its rights to oppose class certification if the Settlement Agreement is not approved or is terminated, and does not admit that a class could otherwise be certified for trial. If this Settlement Agreement is not completed for any reason, Named Plaintiffs will not offer or use as evidence in this Action or in any other proceeding for any reason the fact that Genworth has agreed not to oppose a class for purposes of this Settlement Agreement.

(b)     Genworth and its counsel shall have the right to review and comment on the draft motion to approve Class Notice and for preliminary approval of this settlement before such motion is filed with the Court. Plaintiffs will cooperate in good faith with Genworth and not unreasonably refuse to accept and implement Genworth's suggestions or changes to the draft motion.

(c)     Named Plaintiffs' motion to approve Class Notice and for preliminary approval of this settlement shall seek approval that Class Notice be provided to the Class under FRCP 23(c)(2) in the form and manner described in paragraph 56 below. Class Notice will be provided to the Class Members in the manner approved by the Court. Class Members will be afforded an opportunity to object to the settlement or opt-out of the Class.

42.     <u>Consideration to Class</u>: In consideration for the Releases (paragraph 46 below), Genworth will provide Class Members with certain disclosures and settlement options (described in paragraph 42(a)-(i) below) as approved by the Court, subject to review and/or approval by State Regulators as set forth in paragraph 45 below.

(a)     Genworth will send a special election letter ("Special Election Letter") to all Class Members providing the disclosures and offering settlement options that will be available to each Class Member.

(b)     The disclosures in the Special Election Letter will be in the form and substance attached as **Appendix B** (the "Disclosures"). The options offered to Class Members in the Special Election Letter will include maintaining their current benefits at their existing filed rates (subject to any and all future rate increases that may be approved or otherwise permitted) or to elect from a selection of paid-up reduced benefit options and/or reduced benefit options (also subject to any and all future rate increases that may be approved or otherwise permitted)

9

described in **Appendix C** (the "Special Election Options"), some of which also entitle Class Members to damages payments.

(c)        Each Class Member may elect only one Special Election Option per Class Policy and, where a Class Policy insures a Class Member and another insured person (whether the other insured person is a Class Member or not), both the Class Member and the other insured person shall sign the form indicating their mutual choice of a Special Election Option.

(d)        A template of the Special Election Letter, which will be customized for each Class Member's circumstances, is attached as **Appendix D**. Customization includes situations where not all Special Election Options will be offered to each Class Member, as described in paragraph 42(e)-(i) below.

(e)        The specific Special Election Options offered to each Class Member will differ because Special Election Options are subject to the availability based on each Class Member's current policy terms and benefits, and any State limitations concerning Partnership Plan requirements, the availability of the Lifetime Stable Premium Option and/or Stable Premium Option to the Class Member, and otherwise subject to any State Regulator(s)' review and input as described in paragraph 45 below. With the exception of Special Election Options that offer a Stable Premium Option or Lifetime Stable Premium Option as further described in Appendix C, no Class Member shall be eligible to elect a Special Election Option that increases the amount of their current annual premium.

(f)        The Special Election Options available to Class Members will be based on the Class Members' policy status and/or benefits at the time he or she makes an election, if any. Thus, in some instances where the Class Members' policy status and/or benefits change between the time his/her Special Election Letter is generated and time the Class Member makes an

election, the Special Election Options actually available to a Class Member may differ from what is reflected in his or her Special Election Letter.

(g)     The LSPO Special Election Option described in Appendix C, I.B.3 is only available for Class Policies regulated by States that have specifically approved the availability of that LSPO Special Election Option by or before the time the first Special Election Letter is mailed to Class Members with Class Policies issued in that State.

(h)     The SPO Special Election Option described in Appendix C, I.B.4 is only available for Class Policies regulated by States that have specifically approved the availability of that SPO Special Election Option by or before the time the first Special Election Letter is mailed to Class Members with Class Policies issued in that State.

(i)     A Class Member can only elect available Special Election Options while the Class Member's policy is in force. If, before electing a Special Election Option, a Class Member's policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premiums, or the policy otherwise terminates, then Special Election Options will not be available to that Class Member; if a Class Member's policy lapses but is still in the period where Genworth allows for the policy to be automatically reinstated by paying any past-due premium, then the past due premium must be paid before the Class Member can elect a Special Election Option.

43.     <u>Mailing of the Special Election Letter(s)</u>:

(a)     The Special Election Letter shall be a mailing separate from the Class Notice.

(b)     The Special Election Letter shall be sent after the Final Settlement Date and is subject to paragraph 45 below.

(c)     The Special Election Letter will be sent after GLIC and GLICNY have had sufficient time to properly prepare their administration systems for the mailing, processing, and servicing of Special Election Letters and elections, after the Final Settlement Date.

(d)     Once the preparation of the administration systems is complete ("Systems Administration Completion") and subject to any ongoing communications with any State Regulator(s) as discussed in paragraph 45, Special Election Letters will be mailed approximately six (6) to nine (9) months before each Class Member's next billing anniversary date for his or her Class Policy following Systems Administration Completion.

(e)     Genworth shall have the option to mail additional letters to Class Members, approximately thirty (30) days and approximately sixty (60) days after the mailing of the Special Election Letter, for the purpose of reminding Class Members that they may respond to their Special Election Letters.

44.     Return of the Special Election Letter(s):

(a)     Class Members are not required to choose any Special Election Option and can leave their current Class Policy benefits unchanged, in which case they do not have to complete or return a Special Election form. Class Members who wish to select a Special Election Option shall have ninety (90) calendar days after the date the Special Election Letter is mailed to choose a Special Election Option by sending Genworth a completed form indicating their selection of a Special Election Option postmarked for return mailing by that date or, in the alternative, by fax or email received by Genworth by that date.

(b)     Class Members who do not communicate a Special Election Option selection to Genworth (by form postmarked for return mailing or, in the alternative, by fax or email) within ninety (90) calendar days forever waive their ability to select a Special Election Option and shall still be members of the Class for purposes of this Settlement Agreement, including, but not

12

limited to, the Release. However, Genworth may, at its option, process late Special Election Option forms.    Genworth shall have no obligation to audit postmark return dates.

(c)       Once a Class Member communicates a Special Election Option selection to Genworth, he or she will not be allowed to select any other Special Election Option or reverse or change his or her decision.

(d)       If a Class Member elects a Special Election Option for which he or she is not eligible at the time of the election (*see, e.g.*, ¶ 42(f)), Genworth may provide that Class Member an additional ninety (90) days to make an election from available Special Election Options.

45.       <u>State Regulatory Review and Conflict Carve-Out</u>:

(a)       Genworth shall provide the form of the Special Election Letter preliminarily approved by the Court to each state's State Regulator for review prior to a Special Election Letter being sent to any Class Members whose Class Policy was issued in that State. This submission may, at Genworth's option, be a separate submission from the requirements of 28 U.S.C. § 1715(b).

(b)       In connection with preliminary approval, the parties will ask the Court to set a date by which Genworth will report to the Court any concerns or proposed changes to the Disclosures, the Special Election Options, or the Special Election Letter received from State Regulators, if any.

(c)       If any State Regulator raises a concern about, objects to, or prohibits all or part of the Special Election Letter or the Disclosures, Genworth, in consultation with Class Counsel, shall have a right to decide: (1) whether to not send the Special Election Letter; and/or (2) whether to modify the Special Election Letter for Class Members whose policies were issued in such State to meet such State Regulator's concerns.

(d)      If any State Regulator objects to or prohibits all or part of a particular Special Election Option being offered to Class Members whose Class Policies were issued in that State, Genworth, in consultation with Class Counsel, shall have the right to modify the Special Election Letter and/or Special Election Option in response to the State Regulator's stated concern or objection.

(e)      To allow Genworth to conclude its communications with State Regulator(s), Genworth shall also have the option to delay the mailing of the Special Election Letters to Class Members whose Class Policies were issued in any State(s) whose State Regulator(s) has/have raised a concern about or objected to all or part of the Special Election Letter or the Disclosures or whose State Regulator(s) have not responded to the Special Election Letter or Disclosures.

(f)      Genworth and Class Counsel shall confer about and make good faith efforts to agree upon any modification to the Disclosures, the Special Election Letter or the Special Election Options before final resolution of those issues with any State Regulator(s), but Genworth will have sole discretion to agree to any such resolution with any State Regulator.

(g)      Only in the event that a State Regulator objects to or prevents Genworth from providing the substance of the Disclosures contained in **Appendix B** in any form and objects to or refuses to allow Genworth to offer any form of the Special Election Options, then Genworth, in consultation with Class Counsel, will follow such direction from the State Regulator, not send the Special Election Letter, and instead offer the impacted Class Members an election to obtain:

(i)      For Class Members whose policies are still premium paying status, a $100 credit against future Class Policy premiums; or

(ii)      For Class Members whose Class Policies are in Non-Forfeiture Status only, a $100 one-time addition to the Class Members' Non-Forfeiture Option benefit pool.

14

46.     <u>Release by Named Plaintiffs and the Class</u>:

(a)     Upon the Final Settlement Date, each Class Member, as well as each Named Plaintiff, releases and discharges the Genworth Released Parties of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed, foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the Final Settlement Date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Action including, but not limited to, any claims relating to rate increases on Class Policies. This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to the Final Settlement Date. Named Plaintiffs and Class Members will further release the Genworth Released Parties and Class Counsel from any future claims, on any legal or equitable basis, relating to or arising out of the Special Election Options and/or statements and representations provided in connection with the Special Election Options including (but not limited to) any claim specifically relating to any decision, or non-decision, to maintain, modify, or give up coverage. Collectively, the claims described in this paragraph shall be referred to as the "Released Claims."

(b)     The Released Claims shall not include a Class Member's claim for benefits under his or her Class Policy consistent with his or her policy coverage, nor shall it include a Class Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

(c)     Upon the Final Settlement Date, each Class Member and each Named Plaintiff expressly waives and releases any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each Named Plaintiff and each Class Member similarly waives any and all rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Each Named Plaintiff and each Class Member may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the Released Claims, but each Named Plaintiff and each Class Member hereby expressly waives and fully, finally, and forever settles and releases, upon the Final Settlement Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

47.   <u>Covenant Not to Sue by Named Plaintiffs and the Class</u>: Class Members and Named Plaintiffs covenant not to sue, directly or indirectly, any of the Genworth Released Parties or Class Counsel with respect to any of the Released Claims. Class Members and Named Plaintiffs shall forever be barred and enjoined from directly or indirectly filing, commencing, instituting, prosecuting, maintaining, joining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, or before any tribunal or administrative body (including any State Regulator, State Department of Insurance or other regulatory entity) whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any of the Released Claims. If any Class Member or Named Plaintiff breaches this covenant not to sue, the Genworth Released Parties or Class Counsel, as the case may be, shall be entitled to all damages resulting from that

16

breach including but not limited to attorneys' fees and costs in defending such an action or enforcing the covenant not to sue.

48.     <u>Release by Genworth</u>: Upon the Final Settlement Date, Genworth shall release and discharge Named Plaintiffs, the Class, and Class Counsel from any and all claims that arise out of or relate to the institution, prosecution, or settlement of the claims against Genworth in the Action, except for claims relating to the breach or enforcement of this Settlement Agreement.

49.     <u>No Admission Of Liability</u>: This Settlement Agreement is a compromise of disputed claims and the consideration provided for herein is not to be construed as an admission on the part of any Party hereto. Genworth denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit and further denies, for any purpose other than that of settling the Action, that this lawsuit is appropriate for class treatment. Genworth shall not make any allegation that this lawsuit was filed in bad faith or was frivolous. Named Plaintiffs and Genworth are settling this case voluntarily after consultation with competent legal counsel. Throughout the course of the litigation, the Parties and their counsel complied with the provisions of FRCP 11. This Settlement Agreement shall not be used for any purpose, including as evidence by any of the Parties in any judicial, administrative, arbitration, or other proceeding, except for this current proceeding and for the purpose of enforcing the rights and obligations created hereby.

50.     <u>Potential Tax and Partnership Plan Consequences</u>: Payments made in connection with this Settlement Agreement, any Special Election Option, and/or any decision by a Class Members to modify his or her benefits may have tax consequences and/or consequences on his or her Partnership Plan status, for which he or she is solely responsible.

51.    <u>Payment of Class Counsel's Attorneys' Fees</u>: If approved by the Court, Genworth shall pay Class Counsel's reasonable attorneys' fees and litigation expenses, without reducing the benefits to any Class Members, as follows:

(a)    $1,000,000.00 relating to the injunctive relief that is substantially in the form of the Disclosures and the Special Election Option set forth in Appendix C, Option I.A.2 that does not involve a cash damages payment ("Injunctive Relief Fee") within seven (7) calendar days of the Final Settlement Date or the Final Fee Award, whichever is later.

(b)    A payment equivalent to 15% or, if the Court orders a lower percentage to be paid to Class Counsel as attorneys' fees, the lower percentage, of the damages payments paid to Class Members who elect any of the following Special Election Options described in Appendix C, Options I.A.1, I.B.1, I.B.2, I.B.3, I.B.4, I.C.1, II.1, II.2, or III.1 (the " Contingency Fees"). The amount of the Contingency Fees shall be no greater than $18,500,000.00.

(c)    Payments for Contingency Fees shall be calculated within twenty-one (21) calendar days of the end of the Quarter and paid within fourteen (14) calendar days of that calculation.

(d)    If the Court or any reviewing court awards Class Counsel Injunctive Relief Fees or Contingency Fees less than the amount specified in paragraphs 51 or 52, or requested by Class Counsel, then Genworth shall pay such lesser amounts and not be responsible for or liable to Class Counsel for any amount exceeding the amount awarded by the Court, and the above payment amounts and schedule will be prorated accordingly.

52.    <u>Payment of Class Counsel's Reasonable Expenses</u>:

(a)    Genworth shall pay Class Counsel's reasonable litigation expenses approved by the Court in an amount not to exceed $50,000.

(b)    None of the expenses shall be deducted from the payments to Class Members.

18

(c)     These payments shall be made within seven (7) calendar days of the Final Settlement Date, or the Final Fee Award, whichever is later.

53.     <u>Named Plaintiffs' Service Payments</u>:

(a)     Genworth will pay within seven (7) calendar days of the Final Settlement Date a service payment to each of the Named Plaintiffs (or if the Named Plaintiff passes away at any time following the execution of this Settlement Agreement, to Named Plaintiff's estate) in an amount awarded by the Court, not to exceed $15,000.00 to each Named Plaintiff.

(b)     None of these service payments shall be deducted from the payments to Class Members.

54.     <u>Non-Disparagement, Confidentiality, and Public Statements</u>:

(a)     Named Plaintiffs, Genworth, Class Counsel, and Genworth's Counsel shall not make any statements, orally or in writing, to third parties that disparage, are inimical to, or damage the reputation of the Parties. Disparaging remarks, comments, or statements are those that impugn the character, honesty, integrity, morality, business acumen, motives or abilities of the Parties.

(b)     Named Plaintiffs, Genworth, Class Counsel, and Genworth's Counsel, except to the extent otherwise agreed, shall keep confidential and shall make no public statements about the existence and contents of this Settlement Agreement and all settlement and mediation discussions and related negotiations until the date on which the motion for preliminary approval is filed. However, this provision shall not prevent the disclosure, prior to the date on which the motion to notice the Class is filed, of the contents of the Settlement, or the Settlement Agreement (a) by Genworth to its regulators, reinsurers, rating agencies, financial analysts, securities underwriters, auditors, accountants, counsel, and/or any entity to which Genworth has a legal or other mandatory reporting requirement, or (b) to any other person or entity (such as experts) to

19

which these parties agree disclosure must be made in order to effectuate the terms and conditions of the Settlement Agreement.

(c)     Named Plaintiffs, Genworth, Class Counsel, and Genworth's Counsel shall not make public statements regarding the Settlement Agreement at any time except as required by law or with the prior approval of the other Party, except that Class Counsel, Genworth, and Genworth's counsel may make any statements necessary to communicate with Class Members in response to questions they raise after receipt of Class Notice or the Special Elections Letter, including, but not limited to, through a call center and/or website maintained by Genworth, and Genworth may make appropriate or necessary statements to their investors, regulators, and in connection with regulatory or required reports and filings.

(d)     Named Plaintiffs and Class Counsel shall not advertise, promote, or share news or information concerning or related to the Settlement Agreement at any time with the media or others who are not necessary to effectuate the terms of the Settlement Agreement, except that Class Counsel may, subject to Genworth's prior approval, publish the Settlement Agreement on their law firms' respective websites along with a brief, accurate statement regarding the Settlement Agreement and a link to the settlement website for additional information.

(e)     If, at any time, either Genworth, Named Plaintiffs, Class Counsel, or the Settlement Administrator receives any subpoena or other request for information or documents concerning this Settlement or Settlement Agreement, the recipient of such subpoena or request shall provide within five (5) calendar days of receipt of such subpoena or request, notice to Class Counsel and Genworth's Counsel and shall not disclose or produce any information or documents to the subpoenaing or requesting person or entity unless (i) Class Counsel and Genworth's Counsel have approved disclosure or production, (ii) Class Counsel, Genworth, and Genworth's Counsel have not objected to the subpoena or request within the applicable time to

do so, or (iii) the Court or other tribunal with jurisdiction over the subpoena or request has authorized or directed production of such information or documents.

55.   <u>Settlement Administrator</u>: Subject to the Court's approval, the Parties shall utilize Epiq Class Action & Mass Tort Solutions, Inc., a neutral third party, as the "Settlement Administrator." The Settlement Administrator shall be responsible for mailing Class Notices (as further described below), maintaining a settlement website (as to which Genworth and Named Plaintiffs shall agree in good faith on form and substance), receiving and reviewing Requests for Exclusion, providing regular reports on the administration of the settlement to Class Counsel and Genworth's counsel, and auditing Special Election Options pursuant to paragraph 62 below. Genworth shall pay all costs and expenses relating to the notice and settlement administration plan approved by the Court.

56.   <u>Class Notice</u>:

(a)   Within sixty (60) calendar days after the Court grants approval to provide the Class Notice, Genworth shall provide to the Settlement Administrator a list of all known Class Members with each Class Member's last-known mailing address from Genworth's records (the "Class List"). Within thirty (30) calendar days of receiving the Class List from Genworth, the Settlement Administrator shall send out the Class Notice by direct mail. There shall not be a claim form included with the Class Notice. The Class Notice is attached as **Appendix E**.

(b)   Subject to Court approval, the Settlement Administrator shall also publish the Publication Notice (attached as **Appendix F**), which shall be at least an eighth of a page in size.

57.   <u>Websites</u>:

(a)   The contents of the Class Notice shall be reproduced on a website maintained by the Settlement Administrator, with the input and oversight of Genworth's counsel and Class Counsel. The website shall include information regarding the nature of the lawsuit, a summary of

21

the substance of the settlement, the Class definition, the procedure and time period to request exclusion from and/or object to the settlement, and the date set for the Final Approval Hearing.

(b)     Genworth may also maintain a website with information available for Class Members to consult upon receiving the Special Election Letters. Genworth shall provide Class Counsel with an advance opportunity to review, comment, and make suggestions on the website content. Genworth shall cooperate with and not unreasonably refuse to accept such suggestions.

58.     Requests for Exclusion: Class Members must submit any requests to be excluded from the Class ("Requests for Exclusion") to the Settlement Administrator with a postmark on or before sixty (60) calendar days after mailing of the Class Notice, as described in the Class Notice. So-called "mass" or "class" opt outs shall not be allowed. The Settlement Administrator shall promptly provide notice to Class Counsel and Genworth's counsel of any Requests for Exclusion that it receives.

59.     Termination:

(a)     If more than 10% of Class Members request exclusion from the Class or State Regulators representing 10% or more of the Class Members object to the Disclosures and/or Special Election Options, Genworth shall have the right, but not the obligation, to terminate this Settlement Agreement. Genworth may do so by giving written notice to Class Counsel within thirty (30) calendar days of the Settlement Administrator providing its final report of Requests for Exclusion to Genworth's counsel and Class Counsel. Termination shall void all of the rights, obligations, and Releases under this Settlement Agreement, except the provisions that are necessary to effectuate such termination.

(b)     Separately and alternatively, Genworth and/or Named Plaintiffs may terminate this Settlement Agreement if the Court or any appellate court, rejects, modifies, or denies approval of any portion of the Settlement Agreement that the terminating party in its sole

judgment and discretion reasonably determines is material, except that Genworth and/or Named Plaintiffs may not terminate because of a reduction in the amount of any award of attorneys' fees, expenses, or Named Plaintiffs' Service Payments authorized by the Court or any appellate court. Genworth may terminate this Settlement Agreement if the Court or any appellate court awards any attorneys' fees, expenses, or Named Plaintiffs' Service Payment in an amount higher than that specified in this Settlement Agreement, and shall not be responsible for or liable to Class Counsel or Named Plaintiffs for any such higher amount.

60.     Objections: Class Members must submit any objections to the settlement in writing to the Court with a postmark on or after sixty (60) calendar days after mailing of Class Notice, as described in the Class Notice.

61.     Special Election Letter and Option Questions: Genworth may respond to communications and questions from Class Members regarding the Settlement Agreement and Special Election Options. Genworth will operate a call center and may maintain a website. Named Plaintiffs and Class Counsel agree that communications between Genworth and Class Members regarding the administration of the Settlement Agreement and the Special Election Options are expected, appropriate, and not in violation of any rules about communications with Class Members.

62.     Audit by Settlement Administrator:

(a)     Genworth shall process and track the Special Election Options elected by Class Members and sent by those Class Members to Genworth.

(b)     Genworth, or its designee, shall generate quarterly reports to be provided to the Settlement Administrator of Genworth's record of Class Members' election of Special Election Options in its policy administration system as follows:

23

(i)      Following the close of the first Quarter in which Genworth receives and records the first Class Member's Special Election Option, Genworth, or its designee, will send to the Settlement Administrator and Class Counsel a report of all elections Genworth has recorded in its policy administration system each Quarter within twenty-one (21) calendar days following the last day of that Quarter (the "Audit Report").

(ii)      The Audit Report shall collectively include, for each election, the Class Members' Class Policy number, the Special Election Option selected, the amount of any cash damages to be paid as a result of any Special Election Option selected, the amount of any paid-up benefits obtained by the election of a paid-up benefit option (i.e., Appendix C, Option I.A.1 and I.A.2), and the date that Genworth recorded the Class Member's Special Election Option into its policy administration system.

(c)      For each Audit Report, the Settlement Administrator will select a random sample of Class Members not to exceed twenty-five (25) if the Audit Report lists one-thousand (1,000) or fewer Special Election Options and not to exceed fifty (50) if the Audit Report lists in excess of one-thousand (1,000) Special Election Options. Collectively, the foregoing information shall be referred to as the "Audit Sample."

(d)      With respect to, and within twenty-one (21) calendar days of receiving the Audit Sample from the Settlement Administrator, Genworth, or its designee, will provide to the Settlement Administrator a copy of the written Special Election Options received from the selected Class Members and a spreadsheet or other document reflecting (i) the amount of any claims payments to the Class Members, (ii) the Class Member's (as billed) annual premium prior to the election of the Special Election Option, and (iii) annual premium for the Special Election Option selected. Collectively, the foregoing information shall be referred to as the "Audit Information."

24

(e)     The Settlement Administrator shall, within fourteen (14) calendar days of receipt of the Audit Information, conduct an audit to determine if the Audit Information is consistent with the Audit Report and provide the results of that audit to both Genworth and Class Counsel. Collectively, the foregoing information shall be referred to as the "Audit Results." Genworth will use good faith efforts to resolve any discrepancies identified by the Settlement Administrator's audit.

(f)     If it is determined, whether as a result of an audit or otherwise, that Genworth made an error in processing, implementing, recording or reporting any Class Member's election or the calculation of any cash damages, Genworth shall not be liable to the Class Members or to Class Counsel for any damages or other relief, provided that the error is corrected.

(g)     Any and all Audit Reports, Audit Samples, Audit Information, and/or Audit Results shall be treated as Confidential pursuant to the Protective Order in this Action.

63.     <u>Defendants' Representations</u>:

(a)     <u>Solvency</u>: As of the date of the execution of this Agreement, GLIC and GLICNY represent and warrant that they are solvent as determined by their respective State insurance regulator(s). GLIC and GLICNY further represent and warrant that, based on their respective current best estimates as of the date of the execution of this Agreement, the payment of Cash Damages, the Injunctive Relief Fee, Contingency Fees, Class Counsel's litigation expenses, and Named Plaintiffs' Service Payments (the "Settlement Costs") will not cause GLIC or GLICNY to become insolvent under applicable State insurance rehabilitation, liquidation, and/or receivership laws.

(b)     <u>Future Rate Increases</u>: GLIC and GLICNY represent and warrant that they will not use the Settlement Costs as part of the actuarial justification in seeking any additional future rate increases.

64.   Calculation of Deadlines: For purposes of the calculation of any deadlines or time periods as detailed in this Settlement Agreement, "calendar days" means each day, not including the day of the act, event, or default from which a designated period of time begins to run, but including the last day of the period, unless it is a Saturday, Sunday, or U.S. federal government holiday, in which case the period runs until the end of the next day that is not a Saturday, Sunday, or U.S. federal government holiday.

65.   Enforceability: This Settlement Agreement is fully enforceable and binding and is admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding the settlement and/or mediation confidentiality provisions that otherwise might apply under applicable law. The prevailing Party in any civil action to enforce this Settlement Agreement may petition the court to recover costs and reasonable attorneys' fees incurred in connection with such an enforcement action or motion. The Court shall retain jurisdiction over the Parties to enforce this Settlement Agreement and the Final Order and Judgment.

66.   Mutual Full Cooperation: The Parties shall fully cooperate with each other and use their best efforts to accomplish the terms of this Settlement Agreement including, but not limited to, execution of such documents and to take such other actions as may be reasonably necessary to implement the terms of this Settlement Agreement.

67.   No Prior Assignments: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

68.   Construction and Choice of Law: The terms and conditions of this Settlement Agreement are the result of extensive, arm's-length negotiations between the Parties, and all Parties have participated in the drafting of this Settlement Agreement and setting forth its terms,

and this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or their counsel has participated in the drafting of this Settlement Agreement. The law of Virginia shall govern this Settlement Agreement.

69.     <u>Modification</u>: This Settlement Agreement may not be changed, altered, or modified except in a writing signed by GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities), the parties hereto, or as ordered by the Court following a written stipulation between GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities) effectuated through their counsel or the verbal stipulation of counsel for GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities) in open court.

70.     <u>Notice</u>: All notices provided for under this Settlement Agreement shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person, or by an overnight delivery service or by registered or certified mail, postage pre-paid, return receipt requested, as follows:If to the Named Plaintiffs:

> Goldman Scarlato & Penny, P.C.
> Brian D. Penny
> 161 Washington Street, Suite 1025
> Conshohocken, PA 19428
> Telephone: (484) 342-0700
> Email: penny@lawgsp.com
>
> Robbins Geller Rudman & Dowd LLP
> Stuart A. Davidson
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, FL. 33432
> Telephone: (561) 750-3000
> Email: sdavidson@rgrdlaw.com

(b) If to Genworth:

> Genworth Life Insurance Company
> Attention: General Counsel
> 6620 W. Broad Street
> Richmond, VA 23230

with a copy (which shall not constitute notice) to:

Michael Duvall
DENTONS US LLP
601 South Figueroa Street Suite 2500
Telephone: (213) 892-2818
Email: michael.duvall@dentons.com

Brian Pumphrey
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-7745
Email: bpumphrey@mcguirewoods.com

71.   <u>Entire Agreement</u>: This Settlement Agreement contains the entire agreement between the Parties relating to this lawsuit, the settlement, and the transactions contemplated herein and supersedes all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's counsel, related to the lawsuit or the settlement.

72.   <u>Counterparts</u>: This Settlement Agreement may be executed in counterparts, which, when taken together with other signed counterparts, shall constitute one fully executed agreement that shall be binding upon and effective as to all Parties. Photographic, facsimile, and scanned PDF copies of signatures shall have the same efficacy of original signatures and may be used for any purpose consistent with this Settlement Agreement.

73.   <u>Representations</u>: By signing this Settlement Agreement, each of the Parties expressly represents and warrants as follows:

(a)   That it has read the foregoing Settlement Agreement, knows and understands the contents thereof, and has entered into this Settlement Agreement voluntarily and of its own volition.

28

        (b)      That, in entering into this Settlement Agreement, it has not relied on any representation, warranty, or promise made by any person, except for those expressly set forth herein.

        (c)      That, in entering into this Agreement, it has been advised of its meaning and consequences by its legal counsel.

        (d)      That it, or the person executing this Agreement on its behalf, has full power, capacity and authority to execute and deliver this Agreement.

[signatures on next page]

Agreed to by:

**JUDY HALCOM**

_Judy Halcom_ _____   Date: _____8/23/2021_____

6212FDBB448A41E...

Judy Halcom, Named Plaintiff in Her Individual and Representative Capacities

**HUGH PENSON**

_____   Date: _____

Hugh Penson, Named Plaintiff in His Individual and Representative Capacities

**HAROLD CHERRY**

_____   Date: _____

Harold Cherry, Named Plaintiff in His Individual and Representative Capacities

**RICHARD LANDINO**

_____   Date: _____

Richard Landino, Named Plaintiff in His Individual and Representative Capacities

**GENWORTH LIFE INSURANCE COMPANY**

_____   Date: _____

Genworth Life Insurance Company

By: Brian Haendiges

Its: President, CEO, and Chief Risk Officer

**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____   Date: _____

Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President and Chief Risk Officer

30

Agreed to by:

**JUDY HALCOM**

_____   Date:_____
Judy Halcom, Named Plaintiff in Her Individual and Representative Capacities


**HUGH PENSON**

DocuSigned by:

*Hugh Penson*                                      8/22/2021
_____   Date:_____
267EEAD490BE48F...

Hugh Penson, Named Plaintiff in His Individual and Representative Capacities


**HAROLD CHERRY**

_____   Date:_____
Harold Cherry, Named Plaintiff in His Individual and Representative Capacities

**RICHARD LANDINO**

_____   Date:_____
Richard Landino, Named Plaintiff in His Individual and Representative Capacities


**GENWORTH LIFE INSURANCE COMPANY**

_____   Date:_____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President, CEO, and Chief Risk Officer


**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____   Date:_____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President and Chief Risk Officer

DocuSign Envelope ID: 67F18605-805E-4EA4-9B49-A3C87C30CCEB

Agreed to by:

**JUDY HALCOM**

_____   Date:_____
Judy Halcom, Named Plaintiff in Her Individual and Representative Capacities


**HUGH PENSON**

_____   Date:_____
Hugh Penson, Named Plaintiff in His Individual and Representative Capacities


**HAROLD CHERRY**

DocuSigned by:
_HAROLD CHERRY_____   Date:___8/22/2021_____
  E19FDBBBB2554BF
Harold Cherry, Named Plaintiff in His Individual and Representative Capacities

**RICHARD LANDINO**

_____   Date:_____
Richard Landino, Named Plaintiff in His Individual and Representative Capacities


**GENWORTH LIFE INSURANCE COMPANY**

_____   Date:_____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President, CEO, and Chief Risk Officer


**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____   Date:_____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President and Chief Risk Officer

Agreed to by:

**JUDY HALCOM**

_____   Date:_____
Judy Halcom, Named Plaintiff in Her Individual and Representative Capacities


**HUGH PENSON**

_____   Date:_____
Hugh Penson, Named Plaintiff in His Individual and Representative Capacities


**HAROLD CHERRY**

_____   Date:_____
Harold Cherry, Named Plaintiff in His Individual and Representative Capacities

**RICHARD LANDINO**

_____   Date:____8/22/2021_____
Richard Landino, Named Plaintiff in His Individual and Representative Capacities


**GENWORTH LIFE INSURANCE COMPANY**

_____   Date:_____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President, CEO, and Chief Risk Officer


**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____   Date:_____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President and Chief Risk Officer

Agreed to by:

**JUDY HALCOM**

_____   Date: _____
Judy Halcom, Named Plaintiff in Her Individual and Representative Capacities

**HUGH PENSON**

_____   Date: _____
Hugh Penson, Named Plaintiff in His Individual and Representative Capacities

**HAROLD CHERRY**

_____   Date: _____
Harold Cherry, Named Plaintiff in His Individual and Representative Capacities

**RICHARD LANDINO**

_____   Date: _____
Richard Landino, Named Plaintiff in His Individual and Representative Capacities

**GENWORTH LIFE INSURANCE COMPANY**

_____   Date: __8/22/2021_____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President, CEO, and Chief Risk Officer

**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____   Date: __8/22/2021_____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President and Chief Risk Officer

**GOLDMAN SCARLATO & PENNY, P.C.**

_____     Date: ___8/22/2021___

By (Print Name): ___BRIAN D. PENNY___

_Attorneys for Named Plaintiffs and the Putative Class_

**ROBBINS GELLER RUDMAN & DOWD LLP**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**BERGER MONTAGUE P.C.**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**PHELAN PETTY PLC**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**DENTONS US LLP**

_____     Date: _____

By (Print Name): _____

_Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York_

31

**GOLDMAN SCARLATO & PENNY, P.C.**

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**

_____     Date: _8/22/2021_

By (Print Name): _Stuart A. Davidson_

*Attorneys for Named Plaintiffs and the Putative Class*

**BERGER MONTAGUE P.C.**

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

**PHELAN PETTY PLC**

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

**DENTONS US LLP**

_____     Date: _____

By (Print Name): _____

*Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York*

31

**GOLDMAN SCARLATO & PENNY, P.C.**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_


**ROBBINS GELLER RUDMAN & DOWD LLP**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_


**BERGER MONTAGUE P.C.**

_____     Date: 8-23-2021

By (Print Name): Glen L. Abramson

_Attorneys for Named Plaintiffs and the Putative Class_


**PHELAN PETTY PLC**

_____     Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_


**DENTONS US LLP**

_____     Date: _____

By (Print Name): _____

_Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York_

31

**GOLDMAN SCARLATO & PENNY, P.C.**

_____   Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**ROBBINS GELLER RUDMAN & DOWD LLP**

_____   Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**BERGER MONTAGUE P.C.**

_____   Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**PHELAN PETTY PLC**

_[signature]_____   Date: _8-23-2021_

By (Print Name): _Jonathan M. Petty_

_Attorneys for Named Plaintiffs and the Putative Class_

**DENTONS US LLP**

_____   Date: _____

By (Print Name): _____

_Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York_

GOLDMAN SCARLATO & PENNY, P.C.

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

ROBBINS GELLER RUDMAN & DOWD LLP

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

BERGER MONTAGUE P.C.

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

PHELAN PETTY PLC

_____     Date: _____

By (Print Name): _____

*Attorneys for Named Plaintiffs and the Putative Class*

DENTONS US LLP

_____     Date: 8-23-21

By (Print Name): ____Michael Duvall____

*Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York*

31

**MCGUIREWOODS LLP**

Date: 8/23/21

By (Print Name): Brian E. Pumphrey

*Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York*

32

## APPENDIX A

## CLASS POLICIES

### PCS 1 Class Policies

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7000X |
|  | 7020X |
| Alaska | 7000X |
|  | 7020X |
| Arizona | 7000 |
|  | 7020AS |
| Arkansas | 7000 |
|  | 7020 |
| California | 7011 |
|  | 7012 |
|  | 50022K |
|  | 7000AS |
|  | 7000AU |
|  | 7020B |
| Colorado | 7000B |
|  | 7001B |
|  | 7020S |
|  | 7022B |
|  | 7022S |
| Connecticut | 50024B |
|  | 7000AT |
|  | 7000R |
|  | 7001R |
|  | 7020AA |
| Connecticut Partnership | 50024 |
|  | 50024B |
| D. C. | 7000X |
|  | 7001X |
|  | 7020X |
| Delaware | 7000AA |
|  | 7020A |
| Florida | 7000N |
|  | 7001N |
|  | 7020C |

| | |
|---|---|
| Georgia | 50021D |
| | 7000W |
| | 7000Y |
| | 7001W |
| | 7020Y |
| Hawaii | 7000V |
| | 7001V |
| | 7020AJ |
| Idaho | 7000AL |
| | 7020AE |
| Illinois | 7000C |
| | 7001C |
| | 7020E |
| Indiana | 50024A |
| | 7000AM |
| | 7020Q |
| Indiana Partnership | 50024A |
| Iowa | 7000 |
| | 7020K |
| Kansas | 7000M |
| | 7020N |
| Kentucky | 7000Q |
| | 7001Q |
| | 7020AC |
| Louisiana | 7000 |
| | 7020AU |
| Maine | 50020U |
| | 7000AD |
| | 7003AE |
| | 7003CA |
| Maryland | 7000AP |
| | 7020BB |
| | 7020V |
| Massachusetts | 7000AR |
| | 7001X |
| | 7020X |
| Michigan | 7000AG |
| | 7020T |
| Minnesota | 7002MA/B |
| | 7002MC |
| | 7020AQ |
| | 7020BF |

| Mississippi | 7000AF |
| | 7020AL |
| Missouri | 7000F |
| | 7001F |
| | 7020G |
| Montana | 7000AH |
| | 7020AG |
| Nebraska | 7000J |
| | 7001J |
| | 7020U |
| Nevada | 7000AJ |
| | 7020AP |
| New Hampshire | 7000T |
| | 7001T |
| | 7020AK |
| New Jersey | 7000X |
| | 7001X |
| | 7020X |
| New Mexico | 7000AB |
| | 7020AR |
| New York | 50110 |
| | 51000 |
| | 51001 |
| | 51002 |
| New York Partnership | 50109 |
| North Carolina | 7000A |
| | 7001A |
| | 7020J |
| North Dakota | 7000U |
| | 7001U |
| | 7020AH |
| Ohio | 7000G |
| | 7001G |
| | 7020H |
| Oklahoma | 7000AC |
| | 7020AD |
| Oregon | 7000AN |
| | 7020AF |
| Pennsylvania | 7000AX |
| | 7000L |
| | 7001M |
| | 7020BA |
| | 7020F |

| | |
|---|---|
| Rhode Island | 7000AK |
| | 7020AN |
| South Carolina | 50020P |
| | 7000P |
| | 7001P |
| | 7020BD |
| | 7020M |
| South Dakota | 7000AE |
| | 7020AM |
| Tennessee | 7000D |
| | 7001D |
| | 7020R |
| Texas | 7000AV |
| | 7000E |
| | 7001E |
| | 7020BC |
| | 7020D |
| Utah | 7000 |
| | 7020AV |
| Vermont | 7000 |
| | 7020 |
| Virginia | 7000AQ |
| | 7001H |
| | 7020P |
| Washington | 50020E |
| | 7000AW |
| | 7000K |
| | 7001K |
| | 7020L |
| West Virginia | 7000 |
| | 7020 |
| Wisconsin | 50022E |
| | 50023A |
| | 7020AB |
| | 7020BE |
| | 7000S |
| Wyoming | 7000 |
| | 7020 |

**PCS 2 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7030 |
|  | 7031 |
|  | 7032 |
|  | 7030CRT |
|  | 7031CRT |
|  | 7032CRT |
| Alaska | 7030AZ |
|  | 7031AZ |
|  | 7032AV |
| Arizona | 7030AM |
|  | 7031AM |
|  | 7032AJ |
| Arkansas | 7030AB |
|  | 7031AB |
|  | 7032AW |
| California | 7030AE |
|  | 7031AE |
|  | 7032AE |
|  | 7034 |
|  | 7011-A |
|  | 7012-A |
|  | 7034A |
| Colorado | 7030A |
|  | 7031A |
|  | 7032A |
| Connecticut | 7030F |
|  | 7031F |
|  | 7032F |
|  | 7033 |
| D.C. | 7030 |
|  | 7031 |
|  | 7032 |
| Delaware | 7030B |
|  | 7031B |
|  | 7032B |
| Florida | 7030H |
|  | 7031H |
|  | 7032H |

| | |
|---|---|
| Georgia | 7030AL |
| | 7031AL |
| | 7032AN |
| Hawaii | 7030AD |
| | 7031AD |
| | 7032AC |
| Idaho | 7030AV |
| | 7031AU |
| | 7032AR |
| Illinois | 7030D |
| | 7031D |
| | 7032D |
| Indiana | 7030AQ |
| | 7031AP |
| | 7032AL |
| | 50024D-7030AP |
| | 7032AK |
| Iowa | 7030G |
| | 7031G |
| | 7032G |
| Kansas | 7030AF |
| | 7031AF |
| Kentucky | 7030Q |
| | 7031Q |
| | 7032Q |
| Louisiana | 7030AG |
| | 7031AG |
| | 7032AF |
| Maine | 7030AT |
| | 7031AS |
| | 7032AP |
| Maryland | 7030R |
| | 7031R |
| | 7032R |
| Massachusetts | 7030AA |
| | 7031AA |
| | 7030CRT |
| | 7031CRT |
| | 7032CRT |
| Michigan | 7030 |
| | 7031 |

| | |
|---|---|
| Minnesota | 7030P |
| | 7031P |
| | 7032P |
| Mississippi | 7030V |
| | 7031V |
| | 7032V |
| Missouri | 7030C |
| | 7031C |
| | 7032C |
| Montana | 7030W |
| | 7031W |
| | 7032W |
| Nebraska | 7030K |
| | 7031K |
| | 7032K |
| Nevada | 7030U |
| | 7031U |
| | 7032U |
| New Hampshire | 7030AX |
| | 7031AW |
| | 7032AT |
| New Jersey | 7030 |
| | 7031 |
| | 7032 |
| | 7030CRT |
| | 7031CRT |
| | 7032CRT |
| New Mexico | 7030AH |
| | 7031AH |
| | 7032AD |
| New York | 51005 |
| | 51006 |
| | 51007 |
| New York Partnership | 51008 |
| North Carolina | 7030AW |
| | 7031AV |
| | 7032AS |
| North Dakota | 7031AT |
| | 7032AQ |
| | 7030AU |

| | |
|---|---|
| Ohio | 7030AK |
| | 7031AK |
| | 7032AH |
| Oklahoma | 7030S |
| | 7031S |
| | 7032S |
| | 7031X |
| Oregon | 7030AN |
| | 7031AN |
| Pennsylvania | 7030N |
| | 7031N |
| | 7032N |
| Rhode Island | 7030AS |
| | 7031AR |
| South Carolina | 7030J |
| | 7031J |
| | 7032J |
| South Dakota | 7030AR |
| | 7031AQ |
| | 7032AM |
| Tennessee | 7030E |
| | 7031E |
| | 7032E |
| Texas | 7030M |
| | 7031M |
| | 7032M |
| Utah | 7030T |
| | 7031T |
| | 7032T |
| Vermont | 7030 |
| | 7031AY |
| | 7032 |
| Virginia | 7030L |
| | 7031L |
| | 7032L |
| Washington | 7030AC |
| | 7031AC |
| | 7032AB |
| West Virginia | 7030 |
| | 7031 |
| | 7032 |

40

| Wisconsin | 7030AJ |
|-----------|--------|
|           | 7031AJ |
|           | 7032AG |
| Wyoming   | 7030   |
|           | 7031   |
|           | 7032   |

**APPENDIX B**

**DISCLOSURES**

**[Genworth Life Insurance Company's] [Genworth Life Insurance Company of New York's] ("Genworth's") Plans for Significant Additional Future Rate Increases**

As part of the *Halcom class action settlement*, Genworth has agreed to provide additional information on our current plans to seek future rate increases on [PCS I/ PCS II] long term care insurance policies. This information should assist you in evaluating which of the options best meets your needs going forward. Based on our expectations as of [Date], we plan to request multiple rate increases in most states. [[We plan to seek cumulative rate increases of approximately [XXX%] on policies with lifetime benefits and [XXX%] on policies with limited benefits in the state where your policy was issued.] *or* [While we do not have immediate plans to seek rate increases on your policy and policies like yours [[that have a Stable Premium Option] *or* [in the state where your policy was issued]], future premium increases are possible [after the expiration of your premium rate guarantee period.]] *or* [We will not seek rate increases on your [policy] and [policies] like yours that previously selected a Lifetime Stable Premium Option.] *or* [You have previously elected a paid-up option that required no further premium payments, and Genworth's plans for future premium increases do not apply to your policy and policies like yours.] *or* [**You have previously entered a Fully Paid-Up Status and no further premiums are due on your policy, and Genworth's plans for future premium increases do not apply to your policy and policies like yours.**]] [[The plan to request future rate increases noted above is in addition to a [XX%] increase [that is currently scheduled to be implemented over the next X years]. That increase was previously allowed in your state but has not yet taken effect for your policy. [The plans for future rate increases are in addition to any previous increase that is currently being phased in over a number of years for your policy.]] Future rate increases are important to Genworth's ability to pay future claims. The inability to obtain future rate increases may impair Genworth's ability to do so.

As explained further below, it is possible the actual rate increases we seek will be larger or more numerous than currently planned. As you review your special settlement options, you should know that [A.M. Best, a global credit rating agency focused on evaluating the claims paying ability of insurance companies, currently rates Genworth's financial strength as C++, indicating A.M. Best's view that GLIC has a "marginal ability to meet [its] ongoing insurance obligations"].

You should also know that based on our projections, rate increase requests that exceed these percentages would be actuarially justified.

These planned rate increases will only take effect as permitted by applicable state insurance regulators. Based on our experience, we expect that most states will continue to grant some portion or all of the requested rate increases. However, there are some states that have capped the allowable annual increase or placed other limits on increases on policies issued in their states.

In states that do not grant the full increases requested, our current plan is to continue to file for rate increases up to the full amount of our original request. [Again, these rate increases will not affect your policy as your policy is fully paid-up and no more premiums are due.]

[Importantly, our requested rate increases may be higher or lower than our current plans, and/or we may also seek additional future rate increases, which are not contemplated in our current plans. Reasons for such increases may include, for example, the performance of these policies and/or if economic conditions differ from our current projections.]

## APPENDIX C

## SPECIAL ELECTION OPTIONS

Below are Special Election Options pursuant to paragraph 42 of the Settlement Agreement. Pursuant to paragraph 42(i) of the Settlement Agreement, Special Election Options are only available to Class Members whose policies are in force when the Special Election Option is elected. With the exception of Options I.B.3 and I.B.4, Class Members will not be eligible to receive and/or elect Special Election Options where the level of benefits that would be made available by the Special Election Option would exceed the Class Member's current level of benefits.

**I.      Special Election Options for Class Members with Policies That Are Not in Non-Forfeiture Status or Fully Paid-Up Status**[2]

Class Members who have policies that are **not** in Non-Forfeiture Status or Fully Paid-Up Status, excluding Class Members whose level of benefits are below the level of benefits required for the any of the below Options with the exception of Options I.B.3 and I.B.4, will receive the following Special Election Options:

**A.      Paid-Up Benefit Options**

1.      A settlement option consisting of two components: **(a)** a paid-up benefit equivalent to 100% of the Class Member's paid-in premiums through December 31, 2016 plus the Class Member's paid-in premiums paid on or after January 1, 2021, if any, less any claims paid over the lifetime of the policy, and **(b)** a

---

[2] "Non-Forfeiture Status" means a policy status where the Policyholder has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

"Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed. A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.

damages payment equivalent to premiums paid during the time period beginning January 1, 2017 through December 31, 2020. The total paid-up benefit available under this option shall not exceed the Class Member's current actual lifetime benefit at the time his or her election is processed less the Class Member's damages payment under this option.

2. A settlement option consisting of a paid-up benefit option equivalent to **two times** the difference between the Class Member's paid-in premiums to date less claims paid to the Class Member to date. The total paid-up benefit amount available under this option is capped at the Class Member's current actual lifetime benefit at the time his or her election is processed. This option will **not** include any damages payment.

**B. Reduced Benefit Options ("RBOs") for Class Members Who Currently Do Not Have Stable Premium Option ("SPO") or Lifetime Stable Premium Option ("LSPO") Policies**

Class Members who currently have in force policies, ***excluding*** (1) Class Members who previously elected a SPO or LSPO, (2) Class Members whose level of benefits are below the level of benefits required for any of the below Options with the exception of Options I.B.3 and I.B.4, and/or (3) Class Members with Partnership Status whose election of a defined option would cause them to lose Partnership Status, will have the following options:

1. For Class Members with policies with a Benefit Inflation Option ("BIO"), a settlement option consisting of two components: **(a)** a change in the Class Member's policy benefits that removes BIO with a reduction of their Daily Benefit Amount ("DBA") to their original DBA (*i.e.*, the DBA that he or she had

45

prior to any BIO increases)[3]  for a reduced annual premium, and **(b)** a damages payment equal to four times the differential between the Class Member's current (as billed) annual premium for his or her existing policy and the current annual premium for the new reduced level of benefits.

2. For Class Members with lifetime benefit period policies and/or who have Partnership Plan policies, a settlement option consisting of two components: **(a)** a reduction of the Class Member's existing benefit period to the next lowest benefit option available (in the case for Class Members with lifetime benefit period policies, a 6-year benefit period) and a reduction to his or her current DBA (after benefit inflation) by 25%, for a reduced annual premium, and **(b)** a damages payment equal to four times the differential between the Class Member's current (as billed) annual premium for his or her existing policy and the current annual premium for the new reduced level of benefits.

3. For Class Members whose policies are regulated by States that have approved the LSPO, a LSPO with an extended elimination period that will maintain the Class Member's premiums at a stable rate for the life of his or her policy and consist of two additional components: **(a)** a change to his or her existing benefits reducing his or her DBA by 30%, and **(b)** a damages payment equal to four times the differential between the Class Member's current (as billed) annual premium and the current annual premium for the new LSPO, or $1,000, whichever is higher.[4]

4. For Class Members whose policies are regulated by States that have approved the SPO ***but not*** the LSPO, a SPO with an extended elimination period that will

---

[3]  In some cases, Class Members may have made changes to their Class Policies resulting in a recalculated original DBA, in which case, the recalculated DBA will be used in connection with this Special Election Option.

[4]  In some circumstances, the premiums associated with this LSPO may be higher than the Class Member's current premiums.

maintain the Class Member's premiums at a stable rate until at least January 1, 2028 and consist of two additional components: (**a**) a reduction of the Class Member's DBA by 30%, and (**b**) a damages payment equal to four times the differential between the Class Member's current (as billed) annual premium and the current annual premium for the new SPO with the reduced level of benefits, or $1,000, whichever is higher.[5]

## C.  Reduced Benefit Options ("RBOs") for Class Members Who Currently Have Lifetime Stable Premium Option ("LSPO") or Stable Premium Option ("SPO") Policies

1.  Class Members who currently have LSPO or SPO Policies will have an option that maintains their LSPO or SPO status and consists of two additional components: (**a**) a reduction of the Class Member's DBA by 40%, and (**b**) a damages payment equal to four times the differential between the Class Member's current (as billed) annual premium and the current annual premium for the new LSPO or SPO with the reduced level of benefits.

## II.  Special Election Options for Class Members in Fully Paid-Up Status

Class Members in a Fully Paid-Up Status will receive the following Special Election Options:

1.  A settlement option consisting of two components: (**a**) a paid-up benefit equivalent to 100% of the Class Member's paid-in premiums through December 31, 2016 plus the Class Member's paid-in premiums paid on or after January 1, 2021, if any, less any claims paid over the lifetime of the policy, and (**b**) a damages payment equivalent to four times the Class Member's last annual

---

[5]  In some circumstances, the premiums associated with this SPO may be higher than the Class Member's current premiums.

premium when he or she was in premium-paying status. The total paid-up benefit available under this option shall not exceed the Class Member's current actual lifetime benefit at the time his or her election is processed less the Class Member's damages payment under this option.

2. A settlement option consisting of two components: **(a)** a reduction of the Class Member's existing benefit period to the next lowest benefit option available (in the case for Class Members in a Fully Paid-Up Status that have lifetime benefit period policies, a 6-year benefit period) and a reduction to his or her current DBA (after benefit inflation) by 25%, and **(b)** a damages payment equal to four times the differential between **(i)** what the Class Member's annual premium for his or her existing policy would be as of January 1, 2022 if the Class Member were still in a premium-paying status, and **(ii)** what the Class Member's annual premium for his or her existing policy would be as of January 1, 2022 for the new reduced level of benefits if the Class Member were still in a premium paying status.

### III.   Special Election Option for Class Members in Non-Forfeiture Status

1. Class Members who were on Non-Forfeiture Status after January 1, 2014 but prior to making an election in this settlement will be provided with an option to elect a damages payment of $2,500 and retain their current paid-up benefit.

**IV.    Special Election Options for Class Members in States That Do Not Allow the Disclosure or any Applicable Special Election Options To Be Provided**

To the extent that any State refuses to allow any form of the Disclosures and the Special Elections agreed to in the underlying Agreement, the Class Members in that State will be offered:

1.  For Class Members whose policies are still in force, an option to elect a $100 credit against future Class Policy premiums; or

2.  For Class Members whose Class Policies are in Non-Forfeiture Status only, an option to elect a $100 one-time credit to the Class Members' current benefit pool.

**APPENDIX D**

**SPECIAL ELECTION LETTER**

**TEMPLATE**

## YOUR ACTION IS REQUIRED

**You could get a cash payment up to $[X.XX] and reduce or eliminate your premiums by adjusting your policy's coverage as offered below!**

**Response required by [], 202[].**

**Dear [Name],**

Your long term care insurance policy is part of the class action settlement in *Halcom et al. v. Genworth Life Insurance Company et al.*, Civil Action No. 3:21-CV-19-REP pending in the United States District Court of the Eastern District of Virginia. This letter includes information about your rights under the settlement. It is not a rate increase notice.

**<if in force with Non-Forfeiture Status>**
[You have previously elected a paid-up option that required no further premium payments. As part of this settlement, you can elect a damages payment of $2,500, and retain your current paid-up benefit. Nothing about your current coverage will change if you elect to receive the payment.]

**<if in Fully Paid-Up Status>**
[**Your policy is fully paid-up and requires no further premium payments**. As part of this settlement, we are making options available to you that allow you to reduce your current level of benefits in return for a damages payment. **Please keep in mind that you are not required to choose any of these options to reduce your benefits, and <u>you may keep your policy as is and not be required to make any further premium payments</u>**. Before making an election or deciding to keep your policy as is, we strongly encourage you to discuss the settlement options and the valuable coverage offered by your fully paid-up policy with your financial advisor, family members, or a member of our Customer Service Team by calling [800 883.1127]].

**<if in force, *NOT* with Non-Forfeiture or Fully Paid-Up Status>**
[As a result of the settlement, we are making special settlement options available for you to reduce or eliminate future premiums in return for adjusting your policy's benefits, while still providing meaningful coverage. Most options also provide for a one-time cash payment to you. <u>You are not required to choose any of these options, and you may instead keep your policy as is</u>.]

**<if additional increases planned>**
[As you evaluate these choices, please be aware that as of [mm/dd/yyyy], we plan to seek cumulative rate increases of approximately [XXX%] on policies with lifetime benefits and [XXX%] on policies with limited benefits in the state where your policy was issued. Any future premium rate increase will be subject to approval by the state in which the [policy] was issued and, if approved, may be approved for less than the amount requested by Genworth. If you decide to keep your existing coverage, or if you decide to select a settlement option that requires you to continue paying premium, your policy will be subject to premium rate increases in the future. Please also review the important disclosures provided as part of the settlement about our premium rate increase plans and our reasons for seeking such increases later in this letter.]

**&lt;if LSPO&gt;**

[As you evaluate these choices, please be aware that because you have previously elected a Lifetime Stable Premium Option, we will not seek further premium rate increases on your policy.]

**&lt;if no additional increases planned or SPO&gt;**

[As you evaluate these choices, please be aware that we do not have immediate plans to seek premium rate increases on your [policy] and policies like yours [&lt;if SPO&gt; that have a Stable Premium Option] [&lt;if no additional increases planned in state&gt; in the state where your [policy] was issued], although future premium rate increases are possible [&lt;if SPO&gt; after the expiration of your premium rate guarantee period]. Any future premium rate increase will be subject to approval by the state in which the policy was issued and, if approved, may be approved for less than the amount requested by Genworth. If you decide to keep your existing coverage or if you decide to select a settlement option that requires you to continue paying premium, your policy may be subject to premium rate increases in the future.]

**&lt;if Class Member has not already been notified of a new approved scheduled rate increase and one is pending&gt;**

[In addition to the future rate increase plans, you should also consider that a new XX% premium rate increase is scheduled to take effect on your policy on XX/XX/XXXX [and will be phased in over X years].]

**&lt;if a reduced paid-up option or LSPO available&gt;**
[Any future premium rate increases would not be applicable if you choose a settlement option with a reduced paid-up benefit (Option 1 [or [Option 2]] [&lt;if LSPO available&gt;] or the Lifetime SPO Settlement Option).]

Your options are outlined below and are only available to you in this settlement. These options are separate and different from any reduced benefit options that may be available in connection with a premium rate increase. As you evaluate these options, you should consider if your circumstances have changed since you purchased your policy and review the Important Information about Your Settlement Options included with this letter.

**&lt;representative template options to be shown for Class Members in premium-paying status, if available&gt;**
**[Options 1 and 2**:

Pay no more premiums and receive a reduced paid-up benefit amount, which would be available to pay your future claims. **Option 1** includes an *enhanced* paid-up benefit equal to twice the difference between the total amount of premiums you have paid and the amount of claims payments made to you, if any. **Option 2** provides a lower *basic* paid-up benefit (the amount of premiums you've paid through December 31, 2016 plus premiums you have paid on or after January 1, 2021, less any claims payments made to you to date, if any), but it also provides for a **one-time cash payment of [###]**. For details on these paid-up benefits, see the Important Information about your Settlement Options included with this letter. If you choose either of these options, you will not be subject to any future rate increases.

**Options 3, 4 and 5**:

These options provide for a **one-time cash payment** to you. They may also provide for reduced premiums in return for certain reductions to your policy's current benefits. Although your premiums and benefits will be reduced under these options, your new reduced premiums would still be subject to future rate increases.   **Option 3** reduces your premiums, removes the Inflation Benefit, which provides for certain annual benefit increases, and reduces your Daily Benefit Amount to your original Daily Benefit Amount.[1]  **Option 4** reduces your premiums and lowers your existing benefit period and reduces your current Daily Benefit Amount by 25%. **Option 5** provides <span style="color:red">**<For Class Members who do not already have Lifetime Stable Premium Option or Stable Premium Option with Class Policies issued by States that have approved Lifetime Stable Premium Option or Stable Premium Option as an offering>**</span> [[a Lifetime Stable Premium Option with a 30% reduction in your current Daily Benefit Amount, a three-year Benefit Period, an extended Elimination Period, a 1% Compound Inflation Benefit, and a guarantee that your premiums will never increase again] *or* [a Stable Premium Option with a 30% reduction in your current Daily Benefit Amount, a three-year Benefit Period, an extended Elimination Period, a 1% Compound Inflation Benefit, and a guarantee that your premiums will not increase until at least January 1, 2028]]. <span style="color:red">**<For Class Members with a Lifetime Stable Premium Option or Stable Premium Option>**</span> [an option to keep your [Lifetime] Stable Premium Option and reduce your current Daily Benefit Amount by 40%.].**]**

<span style="color:red">**<representative template options to be shown for Class Members in Fully-Paid Up status, if available>**</span>
**[Option 1** provides a *basic* paid-up benefit (the amount of premiums you've paid through December 31, 2016 plus premiums you have paid on or after January 1, 2021, less any claims payments made to you to date, if any), but it also provides for a **one-time cash payment of [###]**. For details on this paid-up benefit, see the Important Information about your Settlement Options included with this letter.

**Option 2** lowers your existing benefit period and reduces your current Daily Benefit Amount by 25%, but it also provides for a **one-time cash payment of [###].]**

If you wish to choose one of the special settlement options you MUST sign and return by mail (postmarked by the return deadline), fax, or email the completed enclosed form indicating your choice by: [MONTH DAY, YEAR]. If you want to keep your policy as is, you need not do anything. Please note that if we don't hear from you by [MONTH DAY, YEAR], your policy will stay the same and you will no longer be entitled to these special settlement options, including those that result in a payment to you.

---

[1]  If you have made changes to your policy that resulted in a recalculated original Daily Benefit Amount, the recalculated original Daily Benefit Amount will be used in connection with this Special Election Option.

The chart below shows how each of these options compares to your current premiums and benefits.* For additional definitions of terms in the chart, please see the included Important Information about Your Settlement Options.

| | Your Current Benefits | Option 1 Enhanced Reduced Paid-Up Benefit | Option 2 Basic Reduced Paid-Up Benefit *Plus* Cash Payment | Option 3 Remove Inflation Benefit & Revert to Original Benefit Levels *Plus* Cash Payment | Option 4 Reduce Benefit Period from [Lifetime] to [x] Years & Reduce Lifetime & Daily Benefit Amount, *Plus* Cash Payment | Option 5 [Lifetime]SPO -Set Level of Reduced Benefits, plus Reduced Daily Benefit Amount, a [Lifetime][Limited] Premium Guarantee *Plus* Cash Payment |
|---|---|---|---|---|---|---|
| Cash Payment | N/A | None | $[9,875.95] | $[5,503.96] | $[2,011.76] | $[6,368.36] |
| Daily Benefit Amount | $[270.38] | $[270.38] | $[270.38] | $[107 .00] | $[202.79] | $[189.27] |
| Inflation Benefit | [Compound [5]%] | [None] | [None] | [None] | [Compound [5]%] | [Compound [1]%] |
| Elimination Period | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care |
| Benefit Period | [Unlimited] | [N/A] | [N/A] | [Unlimited] | [6 years] | [3 years] |
| Total Lifetime Benefit | [Unlimited] | $[61,886.91] | $[21,067.51] | [Unlimited][**] | $[444,110.10][**] | $[207,250.65][**] |
| [Annual Premium] | $[2,792.19] | Pay no further premiums. | Pay no further premiums. | $[1,416.20] | $[2,289.25] | $[1,200.10] |

*Benefits, premiums and payment amounts in this chart are subject to confirmation and may change based on changes you make to your policy, including, for example, your receipt of any claim payments, your payment of any additional premium, or changes you make to your benefits. For more details, see the Important Information about your Settlement Options included with this letter.*

**This is the amount available to you for future claims. It is the Total Lifetime Benefit less past claims paid under the policy.*

Settlement options are only available to you if your policy is still in force or in non-forfeiture status at the time your election is postmarked for mailing or sent to us by fax or email. If your policy lapses but is still in the period during which your policy can be automatically reinstated by paying any past-due premium, you will need to reinstate your policy by paying the past-due premium before you may select one of these options.

**We encourage you to discuss the options with your financial advisor, family members, or a member of our Customer Service Team by calling [800 883.1127].**

**YOUR ACTION IS REQUIRED**

**[Genworth Life Insurance Company's] [Genworth Life Insurance Company of New York's] ("Genworth's") Plans for Significant Additional Future Rate Increases**

As part of the *Halcom class action settlement*, we have agreed to provide additional information on our current plans to seek future rate increases on [PCS I/ PCS II] long term care insurance policies. This information would assist you in evaluating which of the options best meets your needs going forward. Based on our expectations as of [Date], we plan to request multiple rate increases in most states. [[We plan to seek cumulative rate increases of approximately [XXX%] on policies with lifetime benefits and [XXX%] on policies with limited benefits in the state where your policy was issued.] *or* [While we do not have immediate plans to seek rate increases on your policy and policies like yours [[that have a Stable Premium Option] *or* [in the state where your policy was issued]], future premium increases are possible [after the expiration of your premium rate guarantee period.]] *or* [We will not seek rate increases on your [policy] and [policies] like yours that previously selected a Lifetime Stable Premium Option.] *or* [You previously elected a paid-up option that requires no further premium payments, and Genworth's plans for future premium increases do not apply to your policy and policies like yours. *or* **[You have previously entered a Fully Paid-Up Status and no further premiums are due on your policy, and Genworth's plans for future premium increases do not apply to your policy and policies like yours.**]] [[The plan to request future rate increases noted above is in addition to a [XX]% increase [that is currently scheduled to be implemented over the next X years].   That increase was previously allowed in your state but has not yet taken effect for your policy. [The plans for future rate increases are in addition to any previous increase that is currently being phased in over a number of years for your policy.]]. Future rate increases are important to Genworth's ability to pay future claims. The inability to obtain future rate increases may impair Genworth's ability to do so.

As explained further below, it is possible the actual rate increases we seek will be larger or more numerous than currently planned. As you review your special settlement options, you should know that [A.M. Best, a global credit rating agency focused on evaluating the claims paying ability of insurance companies, currently rates Genworth's financial strength as C++, indicating A.M. Best's view that Genworth has a "marginal ability to meet [its] ongoing insurance obligations"].

You should also know that based on our projections, rate increase requests that exceed these percentages would be actuarially justified.

These planned rate increases will only take effect as permitted by applicable state insurance regulators. Based on our experience, we expect that most states will continue to grant some portion or all of the requested rate increases. However, there are some states that have capped the allowable annual increase or placed other limits on increases on policies issued in their states.   In states that do not grant the full increases requested, our current plan is to continue to file for rate increases up to the full amount of our original request. [Again, these rate increases will not affect your policy as your policy is fully paid-up and no more premiums are due.]

[Importantly, our requested rate increases may be higher or lower than our current plans, and/or we may also seek additional future rate increases, which are not contemplated in our current plans. Reasons for such increases may include, for example, the performance of these policies and/or if economic conditions differ from our current projections.]

Sincerely,

[]



**Genworth** Life
Genworth Life of New York
Administrative Office:
3100 Albert Lankford Drive
Lynchburg, VA   24501

# Important Information about Your Settlement Options

from Genworth Life Insurance Company and Genworth Life Insurance Company of New York

Page 1 of [m]

## Definitions

These are summary definitions of terms used in the accompanying *Halcom* class action settlement letter, the Coverage Options Form, and this important information document. Please see your policy for complete definitions and details.

| | |
|---|---|
| Cash Payment | The payment you will receive as a result of selecting a special Settlement Option that provides for a cash payment. The payment arises from the class action settlement and is not a policy benefit. |
| [Annual] Premium | This is the amount you must pay [every year], [twice a year], [each quarter], *or* [each month] in a timely manner to keep your policy in effect. If you select a settlement option with reduced premiums, your new premium will generally take effect as of the beginning of the next policy month after we receive your signed selection. Each policy month generally begins on the same day of the month as your policy anniversary date. Any future rate increases will be based on your new reduced premium amount. <If Policy is in a Fully Paid-up or Non-forfeiture Status> [Since your policy is paid-up [under a non-forfeiture benefit], premiums are not required and future increases will not apply to your policy.] |
| Daily Benefit Amount (DBA) | The daily limit on the combined total for all benefit payments subject to the Daily Benefit Amount. It is called the "Daily Payment Maximum" in the policy. |
| Inflation Benefit | A benefit that increases your policy's benefits each year as shown in your policy. In the policy, it is called a "Benefit Increases" provision. |
| Insured Person | The policyholder named in the policy schedule, and another insured person, if any, who is also named in the policy schedule. |
| Elimination Period | This is generally the number of days for which each Insured Person must incur expenses that qualify for payments under policy benefits subject to the Elimination Period, before we will commence paying benefits. See the policy [<if LSPO or SPO Special Election Option is available to Class Member> and the sample [<if LSPO>Lifetime] Stable Premium option endorsement] for complete details on the Elimination Period. |
| Benefit Period | This is generally the minimum period of years your policy will provide coverage. While the Benefit Period is not a policy definition, it is used to determine your policy's Total Lifetime Benefit. |
| Total Lifetime Benefit | The combined total amount we will pay as benefits under this policy. It is also called the "Lifetime Payment Maximum." |

## Benefit values are approximate

Benefit values presented in the accompanying letter and Coverage Options Form are approximate due to rounding and certain timing considerations.    If you select one of the settlement options, you will receive a written confirmation from us showing your new benefit values. Covered benefits payable at the time of a claim will be calculated in accordance with your policy.

## Considerations related to adjusting your coverage

All of the settlement options available to you may not be of equal value.

If you have a Partnership policy, reducing your coverage may result in a loss of Partnership status, a change in your asset protection type, and may reduce your overall protection.

Benefits are payable only when you meet the terms and conditions for receiving benefits under your policy.

If you remove an Inflation Benefit from your policy, your Daily Benefit Amount and Total Lifetime Benefit will not increase.

Your Benefit Period is the period of time that is used to calculate the Total Lifetime Benefit. Your coverage is based on this Total Lifetime Benefit, not a certain period of time. If your Daily Benefit Amount and/or the Benefit Period are reduced, the Total Lifetime Benefit payable under your policy will automatically be reduced because the policy maximum is a function of the Daily Benefit Amount and the Benefit Period. In addition, other benefit amounts may be reduced.

## Adjustments to premium

If you select a settlement option that eliminates an Inflation Benefit or otherwise reduces your coverage, for all options other than a reduced paid-up benefit option, your new premium will be determined as follows: Your new premium will be the same as what it would have been (at the time your settlement option becomes effective and including all premium increases) if your policy had included the reduced benefits since it first took effect. This premium is subject to change in accordance with the terms of your policy.

## Premium payments by automatic withdrawal/third-party account/online banking

If you are using automatic withdrawals, the new required premium will be automatically deducted from your bank checking account. If you are using a third-party account, or online banking to pay your premiums, please be sure to make the proper adjustments and arrangements for paying the new required premium amount.

## Total Lifetime Benefit is reduced by benefit payments

Any benefits paid or payable are deducted from the reduced Total Lifetime Benefit. This means the combined maximum policy benefits available for all insureds under the policy will be the new Total Lifetime Benefit less claims paid under the policy. Therefore, if you have previously been on claim, carefully consider whether reducing your benefits is appropriate for your circumstances. [(Note that the new Total Lifetime Benefit for any reduced paid-up option will already reflect the reduction of past claims.)]

## <if in premium-paying status> Selecting an Enhanced or Basic Reduced Paid-up Benefit

If you select a settlement option with a reduced paid-up benefit, your Total Lifetime Benefit will be reduced, any Inflation Benefit provision will be removed from your policy, and you will no longer have to pay policy premiums. Both the enhanced and basic reduced paid-up benefit options are types of Nonforfeiture Benefits, and will be treated as such under the terms of your policy or policies.

For the settlement option that includes the enhanced reduced paid-up benefit, and no cash payout, the new Total Lifetime Benefit will equal 200% of the difference between the sum of all premiums paid under the policy (excluding any waived premium), and the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect. **The total paid-up benefit amount available under this option is capped at the Class Member's current actual lifetime benefit at the time his or her election is processed. This option will not include any damages payment.**

[For the settlement option that includes the basic reduced paid-up benefit, as well as a cash payout, the new Total Lifetime Benefit will equal 100% of the sum of all premiums paid under the policy (excluding any waived premium) through December 31, 2016 and on or after January 1, 2021, minus the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect]. **The total paid-up benefit available under this option shall not exceed the Class Member's actual lifetime benefit at the time his or her election is processed less the Class Member's damages payment under this option.**

Continuation of the policy under the enhanced reduced paid-up benefit [or the basic reduced paid-up benefit] is subject to the following conditions: (a) the policy will be continued under a paid-up status (with no further premium becoming due), subject to all of the terms and conditions of the policy; (b) except as stated below, and subject to the reduced Total Lifetime Benefit, the policy will have the same benefits, Elimination Period, and other policy limits in effect on the date the settlement option takes effect, (c) any Inflation Benefit that was in effect under the policy will no longer apply, which means the new Total Lifetime Benefit will not increase, and (d) coverage will end and the policy will terminate when the total benefits paid under the policy after the settlement option takes effect equals the Total Lifetime Benefit for the reduced paid-up benefit as of the date the settlement option takes effect.

Please note: selecting a reduced paid-up benefit will significantly reduce the policy benefits available to you.

## <if in Fully Paid-Up Status> Selecting a Basic Reduced Paid-up Benefit

If you select a settlement option with a paid-up benefit, your Total Lifetime Benefit will be reduced and any Inflation Benefit provision will be removed from your policy. The reduced paid-up benefit option is a type of Nonforfeiture Benefit, and will be treated as such under the terms of your policy or policies.

[The new Total Lifetime Benefit will equal 100% of the sum of all premiums paid under the policy (excluding any waived premium) through December 31 and on or after January 1, 2021, minus the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect. **The total paid-up benefit available under this option shall not exceed the Class Member's actual lifetime benefit at the time his or her election is processed less the Class Member's damages payment under this option.** Continuation of the policy under the basic reduced paid-up benefit is subject to the following conditions: (a) the policy will be continued under a paid-up status (with no further premium becoming due), subject to all of the terms and conditions of the policy; (b) except as stated below, and subject to the reduced Total Lifetime Benefit, the policy will have the same benefits, Elimination Period, and other policy limits in effect on the date the settlement option takes effect, (c) any Inflation Benefit that was in effect under the policy will no longer apply, which means the new Total Lifetime Benefit will not increase, and (d) coverage will end and the policy will terminate when the total benefits paid under the policy after the settlement option takes effect equals the Total Lifetime Benefit for the reduced paid-up benefit as of the date the settlement option takes effect.

**[<if LSPO or SPO Special Election Option is available> Understanding the [<if LSPO> Lifetime] Stable Premium option**

The [<if LSPO>Lifetime] Stable Premium option is designed to mitigate the impact of future increases by changing your benefits, while also guaranteeing that [<if LSPO>you will not have another premium rate increase for the life of your [policy]<else>your new premium will not increase until at least [January 1, 2028].]    [<if LSPO>By electing the Lifetime Stable Premium option, your Policy changes from guaranteed renewable to non-cancellable, meaning that, subject to the terms of the [policy], you will have the right to continue the [policy] as long as you pay the required premium on time, we cannot change any terms of the [policy] on our own, and your new premium will never change as the result of a future premium rate increase.]

Impact to your benefits. This option will provide a one percent (1%) compound benefit increase going forward, a current Daily Benefit Amount that is reduced by 30%, an extended Elimination Period of [180] days for facility care and [90] days for home care, and a reduced Total Lifetime Benefit that will result in a three-year Benefit Period. As part of the calculation of your new resulting premium, your premium will be adjusted in consideration of this retained benefit. Please review all of the documents in this package, in particular the Coverage Options page and the sample endorsement, for more details regarding how your benefits and premium will change under the [<if LSPO>Lifetime] Stable Premium option.

In accordance with your [policy], if you have previously been on claim, benefits that have already been paid under your [policy] will count toward your new lifetime payment maximum. Therefore, past claims will reduce the amount of the new lifetime maximum available to you for future claims. The Coverage Options form already shows the amount of the new lifetime maximum that would remain, as of the date of this letter, after deducting past claims.

Similarly, in accordance with your [policy], any days which have already satisfied your Elimination Period will continue to satisfy your new Elimination Period under the [<if LSPO>Lifetime] Stable Premium option.

**Selection of a special settlement option cannot be reversed**

Once you send us a signed request to select a settlement option, you cannot reverse your selection. This means we will process any premium and/or benefit reductions for the settlement option and you will not be able to revert back to the premium and benefits you had before your selection. For policies that insure both the policyowner and another Insured Person, the selection of a settlement option cannot be reversed once both the policyowner and other Insured Person send us a signed request to select the settlement option. Because a settlement option cannot be reversed once selected, please carefully consider whether it is right for you before you send us your selection.

**Taxes**

Your policy, including any reduced benefits associated with the selection of a settlement option, is intended to be a federally tax qualified long term care insurance contract under Section 7702B(b) of the Internal Revenue Code of 1986, as amended.

It is your responsibility to assess any potential tax consequences of selecting a settlement option, including, for example, whether any cash payment you receive is taxable. Please consult with your tax advisors. Genworth cannot provide tax advice.

**Unearned Premium**

We will refund any premiums you have paid on your Class Policy that corresponds to the time period after your new reduced paid-up benefit becomes effective, if any. Such refunded premium will not be used to calculate your new reduced paid-up benefit, and, as a result, your actual reduced paid-up benefit may be less than the reduced paid-up benefits in your Special Election Letter.

**For more information**

If you have questions for us about the settlement options available to you, you may call our Genworth Customer Service Team at [800-883-1127].

For information about the cost of long term care in your area, and to see how those costs may change in the future, visit our 20[##] Cost of Care Survey at [].

59



# Coverage Options Form

**THREE WAYS TO CHOOSE**

| **Email:** [] | | **Fax:** [] | | **Mail:** Check a box below. Tear off and return to []. | |

|  | Your Current Benefits | Option 1 Enhanced Reduced Paid-Up Benefit | Option 2 Basic Reduced Paid-Up Benefit *Plus* Cash Payment | Option 3 Remove Inflation Benefit & Revert to Original Benefit Levels *Plus* Cash Payment | Option 4 Reduce Benefit Period from [Lifetime] to [x] Years & Reduce Lifetime & Daily Benefit Amount, *Plus* Cash Payment | Option 5 [Lifetime]SPO -Set Level of Reduced Benefits, plus Reduced Daily Benefit Amount, [Lifetime][Limited] Premium Guarantee *Plus* Cash Payment |
|---|---|---|---|---|---|---|
| **Cash Payment** | N/A | None | $[9,875.95] | $[5,503.96] | $[2,011.76] | $[6,368.36] |
| **Daily Benefit Amount** | $[270.38] | $[270.38] | $[270.38] | $[107 .00] | $[202.79] | $[189.27] |
| **Inflation Benefit** | [Compound [5]%] | [None] | [None] | [None] | [Compound [5]%] | [Compound [1]%] |
| **Elimination Period** | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care | [#] Days Home Care or [#] Days Facility Care |
| **Benefit Period** | [Unlimited] | [N/A] | [N/A] | [Unlimited] | [6 years] | [3 years] |
| **Total Lifetime Benefit** | [Unlimited] | $[61,886.91] | $[21,067.51] | [Unlimited] | $[444,110.10] | $[207,250.65] |
| **[Annual Premium]** | $[2,792.19] | Pay no further premiums. | Pay no further premiums. | $[1,416.20] | $[2,289.25] | $[1,200.10] |

**No Further Premiums**
**Option 1:** Paid-up benefit of 2X difference between premium paid less claims payments
**Option 2:** Paid-up benefit of 1X premiums paid through 12/31/2016 and on or after 1/1/2021, less claims payments; get a cash payment of [####]
**Reduced Premiums**
**Option 3:** Remove inflation benefit; benefit maximums revert to original levels; get a cash payment of [####]
**Option 4:** Reduce benefit period; reduce Daily Benefit Amount by 25%; get a cash payment of [####]
**Option 5:** [Maintain your premium at a stable rate for [[the lifetime of your policy][until 2028]] and reduce your Daily Benefit Amount by 30%; get a cash payment of [####].

Please read all documents before making a decision. If you don't want to choose any of these options, you don't need to do anything and your policy will stay the same. To choose one of these options, we must hear from you by [MONTH DAY, YEAR]. Otherwise, your policy will stay the same and you will no longer be entitled to these special settlement options. Questions? Call [(XXX) XXX-XXXX]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ACT NOW: Your immediate action is required by [Date].

**Option 1:** Enhanced Reduced Paid-Up Benefit
**Option 2:** Basic Reduced Paid-Up Benefit Plus, Cash Payment
**Option 3:** Remove Inflation Benefit, Revert to Original Benefit Level, Plus Cash Payment
**Option 4:** Reduce Benefit Period, Reduce Daily Benefit Amount by 25%, Plus Cash Payment
**Option 5:** [Lifetime] Stable Premium Option, Reduce Daily Benefit Amount by 30%, Plus Cash Payment

## Please return in the enclosed envelope.

By signing, you represent and agree that (1) we are authorized to process the requested change to your policy, (2) a request for a settlement option cannot be reversed once requested, (3) benefits and premiums quoted above are subject to confirmation and may change, (4) you have read and understand the information on this form and the enclosed documents, and (5) complete terms are in your policy. You do not need to return this form if you are keeping your current coverage. If changing your coverage to one of the options above, please check the blue box to indicate your choice, then sign and return this form by email, fax, or mail [in the enclosed envelope] by: [##/##/####]



Policyholder: [Mr. John Smith]

Date: [MONTH DAY, YEAR]

Policy Number: [123456]

Signature: _____

2nd Signature*: _____

Phone Number: _____

Email: _____

Address: _____

* If the policy insures a person in addition to the policy owner, then both the policy owner and the other insured person must sign the form to select a special settlement option.

## APPENDIX E

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

### *Judy Halcom, et al. v. Genworth Life Insurance Company, et al.*

United States District Court for the Eastern District of Virginia (Richmond Division), Case No. 3:21-cv-00019-REP

**TO:** POLICYHOLDERS OF GENWORTH LIFE INSURANCE COMPANY ("GLIC") AND GENWORTH LIFE INSURANCE COMPANY OF NEW YORK ("GLICNY") (collectively GLIC and GLICNY are referred to as "Genworth") LONG-TERM CARE INSURANCE POLICIES ON POLICY FORMS OR CERTIFICATES IDENTIFIED IN THE ATTACHED APPENDIX 1 (the "Class Policies") IN FORCE ON OR AFTER JANUARY 1, 2012 WHOSE POLICIES HAVE NOT LAPSED OR BEEN TERMINATED (AND NOT REINSTATED) AND/OR, PRIOR TO JANUARY 1, 2014, WERE NOT IN NON-FORFEITURE OR FULLY PAID-UP STATUS

YOU ARE HEREBY NOTIFIED that a proposed settlement of the above-entitled class action lawsuit pending in the United States District Court of the Eastern District of Virginia ("the Class Action") has been reached between the parties, and on [DATE], the settlement was granted preliminary approval by the Court supervising the lawsuit.

THE PURPOSE OF THIS NOTICE is to describe the Class Action, to inform you of the proposed settlement terms, and to inform you of your potential rights and options in connection with the settlement. You are encouraged to visit the Settlement website at www.PCSLongTermCareInsuranceSettlement.com for the precise terms and conditions of the settlement, the complete Settlement Agreement, pleading and documents on file in this case, and other information about this Settlement, including important dates, and a full description of the Settlement options you may be offered if the Court approves the Settlement.

The settlement will resolve all claims in the above-entitled Class Action. A court hearing concerning the fairness of the Settlement (the "Final Approval Hearing") will be held on [DATE] at [TIME] at the following address: The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219, Richmond Court Room [[ROOM] to determine whether the settlement should be given final approval by the Court. You are not required to attend the hearing in order to participate in the settlement. BECAUSE YOUR RIGHTS MAY BE AFFECTED, IT IS EXTREMELY IMPORTANT THAT YOU READ THIS ENTIRE NOTICE CAREFULLY.

If you have any questions, you may contact Epiq (the "Settlement Administrator") toll-free at [PHONE], or you may call Class Counsel at [PHONE]. You should not contact the Court, Genworth, or Genworth's counsel with questions about this Notice or the settlement, although you may contact Genworth, as usual, about your policy, benefits, or any election letter received.

## A.  <u>DESCRIPTION OF THE CLASS ACTION</u>

On January 11, 2021, four individuals with GLIC or GLICNY PCS I or PCS II long term care insurance policies, Judy Halcom, Hugh Penson, Harold Cherry, and Richard Landino ("Named Plaintiffs"), filed a Class Action Complaint ("Complaint") against GLIC and GLICNY ("Genworth") in the United States District Court for the Eastern District of Virginia, alleging that Genworth intentionally withheld material information from Policyholders with respect to the full scope and magnitude of Genworth's rate increase action plans and its reliance on Policyholders paying increased rates to pay future claims (the "Complaint"). The Complaint asserted claims for Fraudulent Inducement by Omission and for Declaratory Relief.

Genworth denies any wrongdoing or legal liability for any alleged wrongdoing in connection with any facts or claims that have been or could have been alleged in Named Plaintiffs' lawsuit, whether on behalf of the Named Plaintiffs or Class Members. Genworth contends that neither Named Plaintiffs nor the putative Class has been injured or is entitled to any relief. The Court has not ruled on the merits of the claims or defenses.

All Parties believe in the merits of their respective claims and defenses. Nevertheless, due to the uncertainties, risks, expenses, and business disruption of continued litigation, the Parties have agreed to settle the lawsuit after voluntary mediation proceedings involving a mediator. The parties have entered into a Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), which the Court has preliminarily approved as fair and reasonable. The principal terms of the Settlement Agreement are summarized in this Notice. The full Settlement Agreement is on file with the Court and available at:

<p style="text-align:center">www.PCSLongTermCareInsuranceSettlement.com.</p>

The attorneys for plaintiffs Judy Halcom, Hugh Penson, Harold Cherry, and Richard Landino have been designated by the Court as "Class Counsel" to represent all Class Members affected by the Settlement Agreement. Class Counsel believes that the Settlement Agreement summarized by this Notice is fair, reasonable, and adequate and in the best interests of the Class Members. The following law firms are Class Counsel and represent the Class Members:

| GOLDMAN SCARLATO & PENNY, P.C.<br>Brian D. Penny<br>161 Washington Street, Suite 1025<br>Conshohocken, PA 19428 | ROBBINS GELLER RUDMAN & DOWD LLP<br>Stuart A. Davidson<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432 |
|---|---|
| PHELAN PETTY, PLC<br>Jonathan M. Petty<br>6641 West Broad Street, Suite 406<br>Richmond, VA 23230 | BERGER MONTAGUE PC<br>Glen L. Abramson<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103 |
| CLASS COUNSEL'S TOLL-FREE NUMBER: 800-851-7783 ||

The Settlement Administrator is Epiq. Epiq's phone number is [PHONE]; and its mailing address is [ADDRESS].

## B. **CLASS MEMBERS**

The "Class Members" for purposes of this settlement are defined as all Policyholders[1] of GLIC and GLICNY long-term care insurance PCS I and PCS II policies, and State variations of those policies in force at any time during the Class Period and issued in any of the fifty (50) States of the United States or the District of Columbia (the "States")[2] excluding: (1) those Policyholders whose policies went into Non-Forfeiture Status[3] or entered a Fully Paid-Up Status[4] prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed[5] and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated,[6] as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter (defined below) would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time before their signed Special Election Option is post-marked for mailing to Genworth, or is faxed or emailed to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff. Changes to your policy status or coverage (including, for example, whether your policy lapses or is terminated) may also impact whether or not you are in the proposed settlement class.

---

[1] "Policyholder(s)" means the policy owner, except: (a) where a single policy or certificate insures both a policy or certificate owner and another insured person, "Policyholder(s)" means both the policy or certificate owner and the other insured person jointly, and (b) where the Class Policy at issue is certificate 7000X, 7020X, 7000Y, 7030CRT, 7031CRT, or 7032CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

[2] "Class Policies" means Genworth long-term care insurance policies on the policy forms identified in the attached Appendix A hereto in force at any time during the Class Period and issued in any of the fifty (50) states of the United States or the District of Columbia. The "Class Period" means any time on or between January 1, 2012 and the date this Class Notice was mailed.

[3] Non-Forfeiture status means the exercise of a "Non-Forfeiture Option." Non-Forfeiture Options include benefits under an optional Non-forfeiture Benefit Rider, the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit), and the Optional Limited Benefit Endorsement.

[4] "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed. A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.

[5] "Lapse" or "lapsed" means a status whereby a policy is no longer in force because premium was not paid as required. A lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium. For purposes of this Agreement, a policy in Non-Forfeiture Status is not a lapsed policy.

[6] "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium. It includes, for example, a Class Policy that has lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.

If your policy lapses after the date of this notice, it must be reinstated within your applicable auto-reinstatement period if you wish to exercise rights and options in the settlement.

## C.  **YOUR OPTIONS**

As a Class Member, you have several options and you should read this entire Notice carefully before acting.

**OPTION #1:** If you do not oppose the settlement of the lawsuit, then simply do nothing. You do not need to return your Opt-Out Form and do not need to send any documents to the Settlement Administrator. IF YOU DO NOTHING, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT, INCLUDING THE RELEASE. If you do nothing, you will not have the right to pursue your own action for the claims covered by the Class Action Release. If the Settlement Agreement is approved by the Court, you will then be sent another correspondence with options to elect to receive benefits under the Settlement Agreement.

**OPTION #2:** If you do NOT want to be bound by the Settlement Agreement and wish to retain the right to proceed against GLIC and/or GLICNY on your own as to the claims that were alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action, subject to any defenses that may be available to GLIC and/or GLICNY to any claims you may have, including, but not limited to, statutes of limitation and statutes of repose, then you must notify the Settlement Administrator that you wish to exclude yourself from the Settlement Agreement and the Class.

To do so, you must send a signed letter to the Settlement Administrator, which includes: (1) your name, (2) your address, (3) if available, your policy number, (4) a statement that you are "requesting exclusion" from the Settlement Agreement, (5) the name of the case and case number (*Halcom, et al. v. Genworth Life Insurance Company, et al.*, Case No. 3:21-cv-00019-REP), and (6) your signature.

Opt-out letters can be mailed to the Settlement Administrator at the following mailing address: [ADDRESS].

The letter requesting exclusion must be postmarked no later than [DATE]. Any request for exclusion received with a postmark after that date will be invalid.

**IF YOU CHOOSE TO EXCLUDE YOURSELF, YOU WILL <u>NOT</u> RECEIVE THE SETTLEMENT AGREEMENT POLICY ELECTION OPTIONS OR OTHER RELIEF AND THE TERMS OF THE SETTLEMENT WILL NOT APPLY TO YOU**.

**OPTION #3: If you want to remain in the Settlement Agreement and be bound by its terms, but you oppose any aspect of the Settlement Agreement, or Class Counsel's application for an award of fees and expenses, you may object to the Settlement Agreement.**

In order to object, you must file a written Objection with the Clerk of United States District Court for the Eastern District of Virginia, located at 701 East Broad Street, Richmond, VA 23219, and you must serve a copy of the written Objection on the Settlement Administrator at the following address: [ADDRESS].

A written Objection must include: (1) your full name, (2) your current address, (3) the name of the case and the case number (*Halcom et al. v. Genworth Life Insurance Company et al.*, Case No. 3:21-cv-00019-REP), (5) the basis or reason(s) for your objection(s), (6) your signature, and (7) if you (or someone on your behalf such as an attorney) intends to appear at the Final Approval Hearing, a statement stating that you (or someone on your behalf) intend to appear at the Final Approval Hearing.

Any written Objection must be filed with the Court **and** sent to the Settlement Administrator with a postmark no later than [DATE]. Any written Objection filed and/or mailed with a post-mark after this deadline will be invalid.

You may be permitted to appear personally (or through an attorney) at the Final Approval Hearing to present your objections directly to the Court if you timely file and serve a written Objection and do not submit a request for exclusion. A written Objection must state whether you (or someone on your behalf, such as an attorney) intends to appear at the Final Approval Hearing. If you wish to have an attorney represent you in connection with any written Objection, including to appear at the Final Approval Hearing, you will be responsible for any fees or expenses of that attorney. If you submit a written Objection, you will remain a Class Members and, if the Court rejects your objection(s), you will still be bound by the terms of the Settlement Agreement, including the Release.

## D.  <u>SUMMARY OF PROPOSED SETTLEMENT TERMS</u>

This Settlement Agreement is conditioned upon the Court entering an order granting final approval of the Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Class. Subject to the Settlement Agreement becoming final, the terms of the Settlement Agreement are as follows:

1. **<u>Special Election Disclosures and Options:</u>** In consideration for a Release as described in Paragraph D.2, and as a direct result of the Class Action and the Settlement Agreement, Genworth will send a special election letter ("Special Election Letter") to all Class Members after the Settlement has been finally approved. The Special Election Letter will contain, subject to approval by the Court and being approved by and/or not objected to by state insurance regulators:

   (a) Disclosure of certain information about GLIC's and/or GLICNY's future rate increase plans and need for future rate increases (the "Disclosures"); and

(b) Class Members' right to make an election of either (1) maintaining current benefits at existing filed rates (subject to the future approved rate increases), or (2) electing from a selection of reduced paid-up benefit options or reduced benefit options (the "Special Election Options"), subject to the availability of those options depending on each Class Member' current policy terms and benefits and any state limitations concerning Partnership Plan ("Partnership Plan") requirements. Special Election Options that may be available could increase the amount of your current non-forfeiture paid-up benefit or entitle you to cash damages pay-outs. The actual Special Election Options available to you will depend upon many factors including, but not limited to, your current policy status and benefits, final court approval, and state regulatory review and comment.

(c) Please visit the settlement website, www.PCSLongTermCareInsuranceSettlement.com, for a full description of these options and a sample of the Special Election Letter.

2. **Release:** Each member of the Class who does not timely and validly opt out of the Class, will fully and irrevocably waive and release GLIC and GLICNY (collectively "Genworth") and each of those entities' respective affiliates, predecessors, successors, parents, subsidiaries, and, for each of the foregoing, their current, former, and future directors, officers, direct and indirect owners, members, managers, attorneys, representatives, employees, and agents (the "Genworth Released Parties") of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed, foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the final settlement date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action including, but not limited to, any claims relating to rate increases on Class Policies. This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to the final settlement date. Named Plaintiffs and Class Members will further release the Genworth Released Parties and Class Counsel from any future claims, on any legal or equitable basis, relating to or arising out of the Special Election Options and/or statements and representations provided in connection with the Special Election Options including (but not limited to) any claim specifically relating to any decision, or non-decision, to maintain, modify, or give up coverage.

This Release will not prevent a Class Member from making a claim for benefits under his or her long-term care insurance policy consistent with his or her policy coverage, nor shall it include a Class Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

66

This Class Notice only contains a summary of the actual benefits and release language contained in the Stipulation of Settlement, which is on file with the Court and available for your review, including on the settlement website described below. If the Settlement Agreement is not approved by the Court or does not become final for any reason, the Class Action will continue, this Release will not be binding, and the Special Election Options will not be available.

3. **Attorneys' Fees and Litigation Expenses:** As part of the request for Final Approval of the Settlement Agreement, Class Counsel will file a request seeking to be paid the following:

   (a) $1,000,000.00 relating to the injunctive relief that is in the form of the Disclosures.

   (b) An additional contingent payment of 15% of certain amounts related to Special Election Options selected by the Class, which shall be no greater than $18,500,000.00. **None** of the attorneys' fees will be deducted from payments made by Genworth to Class Members.

Class Counsel will also file a request for an award of reasonable litigation expenses in this case. These expenses will be no more than $50,000.

These are the only attorneys' fees and litigation expenses that Class Counsel will be paid as a result of the Settlement. Class members will not be required to separately pay Class Counsel for any other attorneys' fees or expenses. Genworth has agreed to pay all fees and expenses separately. The actual amounts of attorneys' fees and litigation expenses to be paid to Class Counsel will be determined by the Court, and these amounts will be paid by Genworth directly to Class Counsel.

This Class Notice only contains a summary of the actual Attorneys' Fees and Litigation Expenses provisions contained in the Settlement Agreement, which is on file with the Court and available for your review, including on the settlement website described below.

4. **Class Representative Service Payment:** Named Plaintiffs Judy Halcom, Hugh Penson, Harold Cherry, and Richard Landino have been appointed as class representatives by the Court. As part of the request for Final Approval of the Settlement Agreement, Class Counsel will request that service payments be awarded to each class representative in an amount of up to $15,000 for each of them for the time, work, and risk they undertook in bringing this Class Action and achieving a settlement on behalf of all Class Members. None of the service payments approved by the Court will be deducted from payments made by Genworth to Class Members.

## E.  **FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT**

The Final Approval Hearing on the fairness and adequacy of the Settlement Agreement will be held on [DATE], 202[], at [TIME] in Courtroom [#] in The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219. You are not required to attend the Final Approval Hearing in order to participate in the Settlement Agreement, although you are free to do so if you choose. The Court, in its discretion, may continue the Final Approval Hearing to a later date, in which case no additional written notice will be sent to Class Members, so it is incumbent upon you to check the settlement website regarding the Final Approval Hearing date and time if you wish to attend.

## F.  **ADDITIONAL IMPORTANT INFORMATION**

The Special Election Options described in this notice still require final approval by the Court and are subject to review by state insurance regulators.

You should also consider the following additional information, which may impact the availability of Special Election Options under this settlement:

1. **If you currently have a long-term care policy with Genworth, you must continue to pay premiums (unless your premiums have been waived or your policy is in Fully Paid-Up Status) to keep your policy in force so that it is eligible for Special Election Options under this settlement.** Your premiums also remain subject to any rate increases that may be approved or otherwise permitted.

2. **Changes to your policy status or coverage (including lapse or termination) may impact whether or not you are in the proposed settlement class and/or whether Special Election Options will be available to you.**

   - If your policy lapses after the date of this notice but is still in the period during which your policy can be automatically reinstated by paying any past-due premium, you will need to reinstate your policy by paying the past-due premium to exercise any rights and options under the settlement.

   - If, before you are sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past

68

due premium, or terminates for any other reason, then you will be excluded from the Settlement Class and the Special Election Options will not be available to you.

- If, after you have been sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium, or terminates for any other reason, then you will remain in the Settlement Class and release your claims, but you will no longer be eligible for the Special Election Options.

3. **If you reduce your coverage, including in response to a rate increase on your policy, your reduction in coverage may affect the Special Election Options that otherwise may become available to you under this settlement.** As a Policyholder, you have options to reduce your coverage that are separate from the Special Election Options that may become available to you under this settlement. For example, if there is a premium rate increase on your policy, you will have options for reducing your coverage. Those options will be different from any Special Election Options that may become available under this settlement and do not include the possibility of a cash damages payout. If you select an option to reduce your coverage separate from the Special Election Options that may be available under this settlement, you may eliminate or reduce the availability of any future Special Election Options or the value of any corresponding cash damages payments that may be available. Whether one of these options or any Special Election Option will best meet your needs will depend on your specific circumstances.

This Notice is only a summary of the Settlement Agreement. For the precise terms and conditions of the settlement, the complete Settlement Agreement, pleadings and documents on file in this case, and other information about this settlement including important dates, PLEASE VISIT THE SETTLEMENT WEBSITE AT www.PCSLongTermCareInsuranceSettlement.com OR CALL THE SETTLEMENT ADMINISTRATOR AT [PHONE].

# APPENDIX 1 TO CLASS NOTICE

## CLASS POLICIES

**PCS 1 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7000X |
| | 7020X |
| Alaska | 7000X |
| | 7020X |
| Arizona | 7000 |
| | 7020AS |
| Arkansas | 7000 |
| | 7020 |
| California | 7011 |
| | 7012 |
| | 50022K |
| | 7000AS |
| | 7000AU |
| | 7020B |
| Colorado | 7000B |
| | 7001B |
| | 7020S |
| | 7022B |
| | 7022S |
| Connecticut | 50024B |
| | 7000AT |
| | 7000R |
| | 7001R |
| | 7020AA |
| Connecticut Partnership | 50024 |
| | 50024B |
| D. C. | 7000X |
| | 7001X |
| | 7020X |
| Delaware | 7000AA |
| | 7020A |
| Florida | 7000N |
| | 7001N |
| | 7020C |

70

| | |
|---|---|
| Georgia | 50021D |
| | 7000W |
| | 7000Y |
| | 7001W |
| | 7020Y |
| Hawaii | 7000V |
| | 7001V |
| | 7020AJ |
| Idaho | 7000AL |
| | 7020AE |
| Illinois | 7000C |
| | 7001C |
| | 7020E |
| Indiana | 50024A |
| | 7000AM |
| | 7020Q |
| Indiana Partnership | 50024A |
| Iowa | 7000 |
| | 7020K |
| Kansas | 7000M |
| | 7020N |
| Kentucky | 7000Q |
| | 7001Q |
| | 7020AC |
| Louisiana | 7000 |
| | 7020AU |
| Maine | 50020U |
| | 7000AD |
| | 7003AE |
| | 7003CA |
| Maryland | 7000AP |
| | 7020BB |
| | 7020V |
| Massachusetts | 7000AR |
| | 7001X |
| | 7020X |
| Michigan | 7000AG |
| | 7020T |
| Minnesota | 7002MA/B |
| | 7002MC |
| | 7020AQ |
| | 7020BF |

| | |
|---|---|
| Mississippi | 7000AF |
| | 7020AL |
| Missouri | 7000F |
| | 7001F |
| | 7020G |
| Montana | 7000AH |
| | 7020AG |
| Nebraska | 7000J |
| | 7001J |
| | 7020U |
| Nevada | 7000AJ |
| | 7020AP |
| New Hampshire | 7000T |
| | 7001T |
| | 7020AK |
| New Jersey | 7000X |
| | 7001X |
| | 7020X |
| New Mexico | 7000AB |
| | 7020AR |
| New York | 50110 |
| | 51000 |
| | 51001 |
| | 51002 |
| New York Partnership | 50109 |
| North Carolina | 7000A |
| | 7001A |
| | 7020J |
| North Dakota | 7000U |
| | 7001U |
| | 7020AH |
| Ohio | 7000G |
| | 7001G |
| | 7020H |
| Oklahoma | 7000AC |
| | 7020AD |
| Oregon | 7000AN |
| | 7020AF |
| Pennsylvania | 7000AX |
| | 7000L |
| | 7001M |
| | 7020BA |
| | 7020F |

| | |
|---|---|
| Rhode Island | 7000AK |
| | 7020AN |
| South Carolina | 50020P |
| | 7000P |
| | 7001P |
| | 7020BD |
| | 7020M |
| South Dakota | 7000AE |
| | 7020AM |
| Tennessee | 7000D |
| | 7001D |
| | 7020R |
| Texas | 7000AV |
| | 7000E |
| | 7001E |
| | 7020BC |
| | 7020D |
| Utah | 7000 |
| | 7020AV |
| Vermont | 7000 |
| | 7020 |
| Virginia | 7000AQ |
| | 7001H |
| | 7020P |
| Washington | 50020E |
| | 7000AW |
| | 7000K |
| | 7001K |
| | 7020L |
| West Virginia | 7000 |
| | 7020 |
| Wisconsin | 50022E |
| | 50023A |
| | 7020AB |
| | 7020BE |
| | 7000S |
| Wyoming | 7000 |
| | 7020 |

**PCS 2 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7030 |
| | 7031 |
| | 7032 |
| | 7030CRT |
| | 7031CRT |
| | 7032CRT |
| Alaska | 7030AZ |
| | 7031AZ |
| | 7032AV |
| Arizona | 7030AM |
| | 7031AM |
| | 7032AJ |
| Arkansas | 7030AB |
| | 7031AB |
| | 7032AW |
| California | 7030AE |
| | 7031AE |
| | 7032AE |
| | 7034 |
| | 7011-A |
| | 7012-A |
| | 7034A |
| Colorado | 7030A |
| | 7031A |
| | 7032A |
| Connecticut | 7030F |
| | 7031F |
| | 7032F |
| | 7033 |
| D.C. | 7030 |
| | 7031 |
| | 7032 |
| Delaware | 7030B |
| | 7031B |
| | 7032B |
| Florida | 7030H |
| | 7031H |
| | 7032H |

| Georgia | 7030AL |
| | 7031AL |
| | 7032AN |
| Hawaii | 7030AD |
| | 7031AD |
| | 7032AC |
| Idaho | 7030AV |
| | 7031AU |
| | 7032AR |
| Illinois | 7030D |
| | 7031D |
| | 7032D |
| Indiana | 7030AQ |
| | 7031AP |
| | 7032AL |
| | 50024D-7030AP |
| | 7032AK |
| Iowa | 7030G |
| | 7031G |
| | 7032G |
| Kansas | 7030AF |
| | 7031AF |
| Kentucky | 7030Q |
| | 7031Q |
| | 7032Q |
| Louisiana | 7030AG |
| | 7031AG |
| | 7032AF |
| Maine | 7030AT |
| | 7031AS |
| | 7032AP |
| Maryland | 7030R |
| | 7031R |
| | 7032R |
| Massachusetts | 7030AA |
| | 7031AA |
| | 7030CRT |
| | 7031CRT |
| | 7032CRT |
| Michigan | 7030 |
| | 7031 |

| | |
|---|---|
| Minnesota | 7030P |
| | 7031P |
| | 7032P |
| Mississippi | 7030V |
| | 7031V |
| | 7032V |
| Missouri | 7030C |
| | 7031C |
| | 7032C |
| Montana | 7030W |
| | 7031W |
| | 7032W |
| Nebraska | 7030K |
| | 7031K |
| | 7032K |
| Nevada | 7030U |
| | 7031U |
| | 7032U |
| New Hampshire | 7030AX |
| | 7031AW |
| | 7032AT |
| New Jersey | 7030 |
| | 7031 |
| | 7032 |
| | 7030CRT |
| | 7031CRT |
| | 7032CRT |
| New Mexico | 7030AH |
| | 7031AH |
| | 7032AD |
| New York | 51005 |
| | 51006 |
| | 51007 |
| New York Partnership | 51008 |
| North Carolina | 7030AW |
| | 7031AV |
| | 7032AS |
| North Dakota | 7031AT |
| | 7032AQ |
| | 7030AU |

| Ohio | 7030AK |
|---|---|
| | 7031AK |
| | 7032AH |
| Oklahoma | 7030S |
| | 7031S |
| | 7032S |
| | 7031X |
| Oregon | 7030AN |
| | 7031AN |
| Pennsylvania | 7030N |
| | 7031N |
| | 7032N |
| Rhode Island | 7030AS |
| | 7031AR |
| South Carolina | 7030J |
| | 7031J |
| | 7032J |
| South Dakota | 7030AR |
| | 7031AQ |
| | 7032AM |
| Tennessee | 7030E |
| | 7031E |
| | 7032E |
| Texas | 7030M |
| | 7031M |
| | 7032M |
| Utah | 7030T |
| | 7031T |
| | 7032T |
| Vermont | 7030 |
| | 7031AY |
| | 7032 |
| Virginia | 7030L |
| | 7031L |
| | 7032L |
| Washington | 7030AC |
| | 7031AC |
| | 7032AB |
| West Virginia | 7030 |
| | 7031 |
| | 7032 |

| | |
|---|---|
| Wisconsin | 7030AJ |
| | 7031AJ |
| | 7032AG |
| Wyoming | 7030 |
| | 7031 |
| | 7032 |

## APPENDIX F

### PUBLICATION NOTICE

### Genworth Long-Term Care Insurance PCS I and PCS II Class Action

Do you own a PCS I or PCS II long-term care insurance policy issued by Genworth Life Insurance Company or Genworth Life Insurance Company of New York? If so, you may be part of a class action settlement. Genworth has agreed to settle a proposed class action involving certain PCS I and PCS II long-term care policies.

In January 2021, four policyholders brought a lawsuit on behalf of a class alleging that Genworth should have included certain additional information in letters sent to Genworth PCS I and PCS II policyholders about premium rate increases. Genworth denies all allegations and maintains that its disclosures to policyholders were reasonable, appropriate and truthful.

Pending final Court approval and subject to certain conditions, impacted policyholders may receive certain disclosures and policy options, including potential payments or credits. If you are a class member, you may be entitled to obtain this relief, and you may have other rights relating to the proposed settlement. To learn more about the settlement (including whether you are a class member and how to be excluded from or object to the settlement), you may visit this website, www.PCSLongTermCareInsuranceSettlement.com, or call the Settlement Administrator at [].