Alan A. Pfeffer
Attorney-At-Law (Retired)
38 Hancock Dr.
Glenmont, NY 12077
cell:518-424-9681
2alanpfeffer@gmail.com

December 8, 2021

Clerk of United States District Court
Eastern District of Virginia,
701 East Broad Street,
Richmond, VA 23219,

Re: Objection  Settlement of Halcom, et al. v. Genworth Life Insurance Company, et al., Case No. 3:21-cv-00019-REP

Honorable Robert E. Payne

    I object to the settlement. It is not fair, reasonable, nor adequate for all of the policyholders. Diminution of the capitalization of Genworth, the Defendant, is antithetical to the best interest of the Defendant's policyholders who are the purported class members.

    My wife and I are both policy holders, and class members,  and  my wife's mother who is 92 years old, is a policyholder and received the Settlement Notice. A separate objection is being filed by my wife incorporating this letter by reference. My policy is now numbered VCG1442216 and my wife, Lenora Galitz, is now policy number VCG14417. Both are in full force and have been since its inception and effective date of June 1, 1999. Both were written under the laws of New York.

    My interest, and that of my wife, is the long term stability of the company and assurances that it will have sufficient assets to pay any claim that either or us may file in the future. Hopefully, it will not be in the near future. As such the Settlement proposal of offering two types of reduced benefits, is not in our interest. The Settlement has one additional option of doing nothing.  My wife and I need protection for the ever rising costs of long term care. We need the full benefit and inflation protection that each of us initially contacted for. The huge payout required by this settlement undermines the long term capitalization of the company and threatens to undermine the security we seek.



The cost of long term care in Upstate NY exceeds the estimates set forth in the plaintiff's papers[1]. Given the vast problems facing nursing homes created by the COVID virus the costs incurred by nursing homes has significantly increased. There are staff shortages requiring increases in compensation to all direct care staff and non-administrative support staff. In addition, nursing homes have incurred unprecedented costs in acquiring and stockpiling personal protective equipment in unprecedented amounts. Nursing homes now need infection control specialists that represent a new cost. In addition, there is the cost created by raising inflation at a rate not faced by the U.S. in about 30 years. All of these new and additional costs will result in rising costs to the patients and residents of nursing homes. People in the Plaintiff class in general need greater benefits not reduced benefits in order to meet increasing cost of long term care.

Home health care aids are in short supply in may areas. This shortage results in a raising cost of long term home health care.

It appears that the Parties have not taken the new unprecedented rising costs of care into account in devising this settlement and protecting the capitalization of the defendant which is needed to protect the interest's of the Plaintiff class. The continuation of the benefits we contacted for is essential since the probability of obtaining the same benefit from a different insurance company is remote. We are much older now than when we bought the policy and I have had a change in my health that may effect my insurability. Also many companies have left this line of business.[2]

---

[1] The Cost of Long Term Care in New York
Long term care is very expensive. Most people cannot afford to privately pay for long term care services for very long.
Nursing home care costs vary in upstate New York from $264 per day in Central New York to $308 per day in the Rochester area, which is approximately $96,360 per year in Central New York to $112,420 per year in the Rochester area.
Downstate, nursing home costs vary from $340 per day in the Northern Metropolitan area to $390 per day in Long Island, which is approximately $124,100 per year in the Northern Metropolitan area to $142,350 per year in Long Island. It is estimated that persons in nursing homes stay for less than 2½ years on average.
Home health care is also expensive. The average cost of home health care in New York State in 2011 was $20 per hour, according to an industry survey. Assuming 20 hours of care per week, this represents average home health care costs throughout the State reach $21,000 per year.
NYS Department of Financial Services https://www.dfs.ny.gov/consumers/health_insurance/long_term_care_insurance/cost_ltc

[2] Insurers Currently Offering Long Term Care Coverage in New York State
Bankers Conseco Life Insurance Company
Genworth Life Insurance Company of New York
Knights of Columbus
Massachusetts Mutual Life Insurance Co.
New York Life Insurance Co.
Northwestern Long Term Care Insurance Co. and
Transamerica Financial Life Insurance Co.
See: https://www.dfs.ny.gov/system/files/documents/2020/05/ltc_insurers.pdf

As our society is aging the need for long term care has and continues to increase. There are shortages of nursing home beds for people with neurodegenerative diseases. Alzheimers is increasing and it is very difficult to find a placement for a person with this disease. In New York policies may NOT exclude or limit benefits for Alzheimer's Disease, senile dementia, or demonstrable organic brain disease. See https://www.dfs.ny.gov/consumers/health_insurance/long_term_care_insurance/comparing_policies. When a person has a long term care insurance policy the chances of his or her acceptance into a nursing home is increased. This is in large part due to Medicaid which pays for most patients being a losing proposition for nursing homes. Many nursing homes in New York either individually or collectively through nursing home associations have informed me that that they don't want to take patients with a neurodegenerative disease because they lose too much money on Medicaid patients.[3]

Class action

The Class should not be finally certified. All members of the class do not have the same interest nor the same injury, if any injury. The differences among the purported Class members far outweighs what they may have in common. The gravamen of the Complaint is that individual class members would have chosen renewal options different than they did if full disclosure of the financial status of Genworth were disclosed. This calls into question the mental operations of each individual[4]. His or her values and priorities. Its seeks a retroactive operation of the minds of thousands of diverse individuals living among the 50 States with different State regulatory procedures. The Settlement Agreement acknowledges the unique nature of each member of the Class, and State Regulatory oversight, See Paragraph 42 (e). Further, even common law fraud requires a strong showing that the injured party relied on the fraudulent statement, an occasion of the operation of the mind, and a choice of behavior.

In New York constructive or actual notice of the underlying conditions were made by virtue of State regulation, couple with the Notice provided by Genworth at the time of the premium notice increases. The New York regulatory process gives the public such notice via the following:

> "For a number of reasons, an insurer may decide to stop selling a certain policy to new applicants (also known as "closing a block of business"). Existing insureds are allowed to remain on the policy.

---

[3] A list of NYS approved Medicaid Nursing Home reimbursement rates is found at: https://www.health.ny.gov/facilities/long_term_care/reimbursement/nhr/2021/2021-07-01_nursing_home_rates.htm

[4] NY regulatory process recognizes the unique nature of purchasing decisions. "Services covered under these policies can be significantly different among policies. It is very important to read the policies carefully and compare the benefits to determine which policy will best meet your own personal needs. https://www.dfs.ny.gov/consumers/health_insurance/long_term_care_insurance/policies_covering

Since new, healthy people are not being added to the policy, some consumers are concerned that this will result in a premium increase. When the Department approves the initial premium of the policy, the policy must be shown to be self-supporting. This means increases should be unnecessary through the life of the insured pool <u>provided the assumptions in the original pricing are correct.</u> Insurers may still request approval of a premium rate increase on a closed block of business due to unanticipated factors arising after the original pricing". see <u>https://www.dfs.ny.gov/ consumers/health_insurance/long_term_care_insurance/ comparing_premiums</u>

Since Genworth sought and was granted a premium increase, the public was constructive informed that the underlying assumptions underlying the original premium were wrong. Thus, the principal component of fraud alleged in the Complaint is unwarranted. In my opinion, Genworth gave sufficient notice and more detailed notice would not be reasonable. It would be unreasonable because it would require that the policyholder have the degree of expertise of a stock analysis or a State regulator. This is not the required standard.

These assertions are further supported by the proposed Settlement making terms subject to the approval of State regulatory agencies or its non-objection. Indeed, each of the 50 state regulatory agencies should have been impleaded as necessary Parties.[5] Certainly each State regulatory agency and each State's Attorney General should have been give notice of this action and an opportunity to intervene in light of its regulatory duties. See Class Action Fairness Act of 2005, Pub. L. 109-2, 28 U.S.C. 1715 (a)(2).

The Settlement agreement provides that: "The Special Election Letter will contain, subject to approval by the Court and being approved by and<u>/or not objected to by state </u>insurance regulators". I object to the silence of a State regulatory agency constituting approval. Express approval must be required in order to maintain the State's rights in overseeing businesses in its jurisdiction.

---

[5] In *Skochin v. Genworth Life Ins. Co.*, No. 19-cv-00049 (REP) (ED. VA. 2019), the prior suit cited in the Complaint at least one State did file a motion to intervene, the Indiana Department of Insurance.

In this manner and since the proposed remedy offers several alternatives, it fails the indivisible relief provisions of the Federal rules.[6] See *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011).

> In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

The certification fails to meet the Rule 23 (b)(3) requirement that the reliance and choices made by each member of the class are in common and predominate over questions of the named individuals. That the Settlement offers several forms of relief undermines the contention that there is a common answer equally applicable among all class members. The Court may well seek to determine if the required Five Million dollars in class injury is more than speculation since some members of the class have no financial injury. This sum is an element of jurisdiction, which cannot be waived.

Paragraph 209 of the Complaint sets forth the allegations of common questions of law and fact. Each allegation focuses on the actions of the Defendant. There are no allegations establishing commonality among the reactions of the class members. The alleged injury involves choices made by individuals, the entire class does not share the same choice. Maintaining the benefits we contracted for was our choice not a reduced benefit sought by some others. Class certification requires the same remedy for all or none of the class. See: *Jennings v. Rodriguez,* 138 S. Ct. 830, 842 (2018)

> "We held in *Dukes* that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Id., at 360. That holding may be relevant on remand because the Court of Appeals has already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter. See, e. g., 804 F. 3d, at 1082; 715 F. 3d, at 1139– 1141 (citing, e. g., *Shaughnessy v. United States ex rel. Mezei,* 345 U. S. 206 (1953)). Assuming that is correct, then it may no longer be true that the complained-of "'conduct is such that it can be enjoined or declared un- lawful only as to <u>all of the class members or as to none of them.</u>'" *Dukes,*

---

[6] The indivisible rule has been applied in several types of disputes: cases involving education-*Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 485, 496 (7th Cir. 2012)
foster care-*M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 835 (5th Cir. 2012)
conditions of confinement,-*Shook v. Bd. of Cty. Comm'rs of El Paso,* 543 F.3d 597, 602, 605 (10th Cir. 2008) For a detailed discussion see: CLASS ACTIONS, INDIVISIBILITY, AND RULE 23(B)(2) MAUREEN CARROLL, BOSTON UNIVERSITY LAW REVIEW [Vol. 99:59

supra, at 360 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 132 (2009))."

My review of the public documents available under the PACER Electronic Case file system did not show a class certification order by the Court as required by Rule 23 (c). The Certification order may only be entered after the Court's rigorous analysis. The mere agreement of the Parties to the certification is insufficient. See *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011).

### Attorney fees

I object to the huge amount of attorney fees. A guarantee of One Million Dollars with a contingency of up to an additional $18.5 million is unreasonable.[7] It is unreasonable on its face, and in view of the limited amount of work actually performed by Plaintiff's attorneys and the proposed Settlement benefits. The flat sum of One Million in my opinion gives rise as to whether it is supported by accurate, timely, and detailed billing records. Care must be taken to avoid a duplicate payment for the same work in view of the Attorney's being the same in this matter as were in *Skochin v. Genworth Life Ins. Co.*, No. 19-cv-00049 (REP) (ED. VA. 2019), the prior suit cited in the Complaint. Matters that the Court may want to investigate. Of particular note is whether there is a charge for reviewing the documents produced during discovery in the *Skoching* matter a second time. In addition, the intellectual capital and expertise brought to this matter is identical to the intellectual capital compensated for in the *Skoching* settlement. Please note that the *Skoching* settlement provided Five Special Election benefits, that were unique. The benefits being offered in this Settlement are not unique, as set forth below and are substantially similar to reduced benefit options provided by the Defendant at the time of the premium increase and there are only two, not five.

I note that no motion to dismiss was filed so much of the usual preliminary trial work occasioned by litigation was not necessary and may not have been performed. No actual trial work was performed. I also object because it is contrary to our interest and the interest of the policy holders in the capitalization of Genworth. Any significant outlay of funds undermines the long term security of the company and threatens the policy holders. The Complaint alleges an injury caused by a company that goes out of business due to undercapitalization. See Complaint Paragraphs 110-117.

In addition I object to attorney fees because in the absence of a class certification under Rule 23 (b)(3) there is no legal basis to an award of attorney fees. Classes certified under Rule 23 (b)(2) are limited to declaratory and injunctive relief.

---

[7] In CAFA, *Supra*, Congress made the following finding"(3) Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where--
    (A) counsel are awarded large fees, while leaving
   class members with coupons or other awards of little or
   no value;

### Nature of the remedy

I object to the remedy offered by the Settlement. It does not represent my interests. My interests are preserved by the proper capitalization of the company. The Complaint alleges that the Defendant paid dividends to its holding company. See Complaint Paragraph 12. A proper remedy is the clawback of those dividends. Also, additional funding from the General Electric Company which at one time was the owner of this line of business and did a spin out of this business. General Electric should have been a named Defendant and the failure to implead it by Genworth is evidence of how Genworth has not represented its policyholders in its defense of this action.[8] Our policies were initially purchased when GE was the owner.

I object to the award of $15,000 to each of the named Plaintiff's. This amount greatly exceeds any premium increases paid by the named individual defendants. Also, a return of a premium paid should only be permitted when and if the named Plaintiff chooses to exercise a right to a retroactive reduced benefit. In the absence of such a decision, payment of a flat sum is an unjust enrichment.

I object to a cash payment to members of the class. A retroactive award is unjust enrichment since each policyholder deciding to continue with full benefits received the insurance coverage represented by the premium. Long Term Care insurance is another type of insurance similar to home fire insurance. The purchaser needs it but never wants to collect. In other words, there was no injury, since if recourse to the policy was needed during this interim period, the policy holder would have had full coverage.

I also object because no award is allowable in the absence of proper Federal Rule 23 (B)(3) Certification.

I object because the relief being offered is substantially the same choices I was offered in 2019 in conjunction with the notice of premium increases. Attached is the notice I received. On the cover page the three options being offered are summarized.
   1 Keep your current coverage the same and pay the premium increase,
   2. Adjust your coverage to reduce your premiums, and
   3. Pay nothing more by electing the Contingent NonForfeiture Benefit.
A copy of the letter is attached.

---

[8] Please see: "Lights Out: Pride, Delusion, and the Fall of General Electric" by Thomas Gryta, Ted Mann "holdings into Genworth Financial in 2004 and sold much of the rest to the Swiss Reinsurance Company two years later. But there was some fine print in the deals. Genworth had a block of reinsurance that covered a variety of long-term care insurance policies, which cover expenses like nursing homes and assisted living. This coverage was gobbled up by customers, but it was priced all wrong and eventually wreaked havoc across the industry. When preparing for the Genworth spin-off, GE's bankers advised not making the long-term care business part of the offering. So to make the deal more attractive, GE agreed to cover any losses from that group of policies.

### The Unanswered Question

In Paragraph 63 of the proposed Settlement Agreement, Defendant asserts that it is currently solvent and will "not use the Settlement Costs as part of the actuarial justification in seeking any additional future rate increases". Unanswered is the how it will remain solvent and yet not use these costs for future rate increases. Remaining solvent far into the future is of major concern to every member of the Class electing to continue his or her policy. I assert that this question is fundamental and must be answered and incorporated into the Settlement Agreement, assuming Court approval of the Settlement.

### General Observations

In my opinion the Settlement should be rejected because neither Party truly represented the policyholders who are relying on the continued viability of the company. Based on the PACER Federal Electronic records that I examined I note that the Defendant did not seek to challenge the class certification. I also note no motion to dismiss was filed. In my opinion, a serious and meritorious question of whether a cause of action exists is presented by the Answer. The underlining threat to the capitalization of the Company is more important to the aging policy holders who are unable to obtain alternative insurance due to the changing nature of the business and should prevail over the Court's possible need for speedy adjudication of disputes through required settlement discussions or mediation.

I bring to this discussion some relevant background. I have an adult daughter who is slowly dying of Huntington's Disease. She resides in a special neurodegenerative disease program in a nursing home. This facility is only one of three such specialized programs in NY. The NYS Department of Health had an advisory committee during the formation of this program. I was a member of that committee. We assisted in the writing of the State regulations, and other aspects such as staff training requirements. I am a frequent visitor of my daughter and I am familiar with many of the problems faced by nursing homes. I also serve as the Advocacy Chair of the Albany Chapter of the national Huntington's Society of America. From this perch I also see the many problems encountered by people with disabilities who need long term care and the problems associated with its payment.

Very truly yours,

Alan A. Pfeffer

cc: Halcom v. Genworth Settlement Administrator,
P.O. Box 5749,
Portland, OR 97228-5749.