UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JUDY HALCOM, HUGH PENSON, HAROLD CHERRY, and RICHARD LANDINO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendants. | Civil Action No. 3:21-cv-00019-REP |

## DIANE CRONE, TERRY CRONE, WALTER LEEN, PAUL LUBELL, BONNIE FONTENOT NIELSON AND DENNIS NIELSON'S OBJECTIONS TO CLASS ACTION SETTLEMENT

NOW COME Settlement Class members, Diane Crone, Terry Crone, Walter Leen, Paul Lubell, Bonnie Fontenot Nielson and Dennis Nielson (collectively "Objectors"), by and through their undersigned counsel, and for their objections to the settlement this Court preliminarily approved in its August 31, 2021 Order [ECF No. 52], pursuant to paragraph 21 of the Order, state the following:

### I.   Introduction

Plaintiffs and Defendants have submitted a settlement for final approval that provides Defendants the security of an air-tight, class-wide release in exchange for providing many of the 146,000 Settlement Class members with nothing more than a choice among options that are impossible to evaluate and potentially of little-to-no value. In other words, this proposed settlement provides Genworth with the tremendous benefit of immunity from any claims related to past premium rate increases (and the execution of this settlement) without any ascertainable benefit to

many of the Settlement Class members, including Objectors. Therefore, the Settlement is unfair, unreasonable and inadequate.

The settlement also fails because the Settlement Class fails to satisfy Federal Rule of Civil Procedure 23(a)'s commonality and typicality requirements.

## II. Background

### A. *Halcom v. Genworth Life Insurance Company* Allegations and Proceedings

Plaintiffs Judy Halcom, Hugh Penson, Harold Cherry and Richard Landino ("Plaintiffs")—who purchased "PCS I" and "PCS II" Genworth long-term care insurance ("LTCI") policies before 2002—generally allege that, starting in 2012, Genworth Life Insurance Company and Genworth Life Insurance Company of New York (collectively "Defendants" or "Genworth") defrauded them by failing to disclose certain and significant future premium rate increases Defendants intended to impose on their LTCI policies at the time they imposed modest premium rate increases. *See* ECF No. 1 at ¶¶ 10-22, 219-239.

In response to the aforementioned modest premium rate increases, Plaintiffs—who reside in Arizona, New York, North Carolina and Pennsylvania—had three options: (1) pay the increased premiums to maintain the same level of benefits; (2) pay reduced premiums in exchange for reduced benefits; or (3) elect a limited "non-forfeiture" option and pay no further premiums. *Id.* at ¶¶ 25-28, 221. Plaintiffs allege that they would have selected different options had they known about "Genworth's massive rate increase plan." *Id.* at ¶ 232.

On January 11, 2021, Plaintiffs filed a putative class action lawsuit against Genworth, the country's largest long-term care insurer, (1) "alleging fraudulent inducement by omission" and (2) seeking a declaratory judgment that Genworth had a duty to disclose information regarding the certain and significant future premium increases it intended to impose on class members' policies at the time it imposed the aforementioned modest premium rate increases. *Id.* at ¶¶ 202-239.

Genworth answered the complaint on March 15, 2021. ECF No. 13. On May 27, 2021, the parties notified the Court of their intent to engage in private mediation. ECF No. 40. On August 23, 2021, Plaintiffs filed their "Motion to Direct Notice of Proposed Settlement to the Class." ECF No. 44. The Court preliminarily approved the settlement and directed notice to the class on August 30, 2021. ECF No. 52.

The Settlement Class includes more than 146,000 Genworth insureds in all 50 states and the District of Columbia whose "PCS I" and "PCS II" LTCI policies have been in effect at any time since January 1, 2012 and excludes certain individuals identified in the Court's August 31, 2021 Order Granting Preliminary Approval of Settlement and Directing Notice to Class. *Id.* at 3-4. The class this Court preliminarily certified is hereinafter called the "Settlement Class." Putative class members are automatically included in the Settlement Class unless they opt out.

Under the terms of the rather complicated settlement, Genworth will send a "Special Election Letter" to Settlement Class members who do not opt out of the settlement. ECF No. 46-1 at 13-16.[1] The Special Election Letter will: (1) disclose information about Genworth's intent to impose future premium rate increases on its LTCI policyholders and Genworth's ability to pay future claims; and (2) offer policyholders the ability to choose from several Special Election Options for continuation or termination of their respective LTCI policies. *Id.* at 13-15, 54-60.

For Settlement Class members whose policies are not in non-forfeiture or fully paid-up status, the following Special Election Options may be available:

1. One of two paid-up benefit options

    a. A settlement option consisting of two components: (a) a paid-up benefit option equivalent to 100% of the class member's paid-in premiums through December 31,

---

[1] Regarding record citations, Objectors cite to the ECF page numbers.

3

   2016 plus the class member's paid-in premiums on or after January 1, 2021, if any, less any claims paid over the lifetime of the policy; and (b) a damages payment equal to premiums paid during the time period beginning January 1, 2017 through December 31, 2020; or

  b. A paid-up benefit equal to two times the difference between the class member's paid-in premiums to date less claims paid to the class member to date. This option will not include any damages payment.

2. One of three reduced benefit options for Settlement Class members whose policies are not in "Stable Premium Option" or "Lifetime Stable Premium Option" status (the "Stable Premium" and "Lifetime Stable Premium" options allow Genworth LTC insureds to adjust their coverage to mitigate current and/or planned future premium rate increases):

  a. For class members whose LCTI policies contain inflation protection, a premium reduction, removal of inflation protection, a daily benefit amount reduction to the original daily benefit amount, and a damages payment equal to four times the differential between the class member's current, as billed, annual premium and the current annual premium for the new reduced level of benefits;

  b. For class members with lifetime benefit period policies, a premium reduction, a shortened benefit period, and a 25% reduction to their daily benefit amount, and a damages payment equal to four times the differential between the class member's current, as billed, annual premium and the current annual premium for the new reduced level of benefits; or

  c. An option that reduces the class member's daily benefit amount by 30% and provides either a "Lifetime Stable Premium Option" with an extended elimination

period that will maintain premiums at a stable rate for the life of the policy or a "Stable Premium Option" with an extended elimination period that will maintain premiums at a stable rate until at least January 1, 2028.

3. Class members whose policies are in "Stable Premium Option" or "Lifetime Stable Premium Option" status will have an option to keep their "Stable Premium Option" or "Lifetime Stable Premium Option" status and receive two additional components: (a) a reduction of the class member's daily benefit amount by 40%, and (b) a damages payment equal to four times the differential between the class member's current, as billed, annual premium and the current premium for new "Stable Premium Option" or "Lifetime Stable Premium Option" status with the reduced level of benefits.

*Id.* at 56-59.

There are additional Special Election Options for Settlement Class members whose policies are in fully paid-up or non-forfeiture status. *Id.* at 59-61.

In exchange for the Special Election Letter and the ability to choose one of the Special Election Options, Settlement Class members will release Genworth from any and all claims related to previous premium rate increases. *Id.* at 19-21. Regarding future claims, Settlement Class members will release Genworth from all future claims related to the settlement's Special Election Options (and/or representations related thereto). *Id.*.

### B. Objectors

#### i. Diane Crone and Terry Crone

Diane and Terry Crone are Settlement Class members residing at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In or around January 2000, Terry and Diane Crone (a married couple) purchased a Policy Form Series 7030L (PCS II) LTCI policy with an effective date of coverage of February 19, 2001.

On December 22, 2012, Genworth notified Mr. and Mrs. Crone that it was increasing their annual premium 18%. Ex. A.

On December 17, 2013, Genworth notified Mr. and Mrs. Crone that it would be increasing their premium 63% over the following three years. Ex. B.

On November 29, 2019, Genworth notified Mr. and Mrs. Crone that it would be increasing their annual premium 55%. Ex. C at 1.  In its correspondence notifying Mr. and Mrs. Crone of the 55% premium increase, Genworth stated:

> Our decision to increase premiums is primarily based upon the fact that expected claims are significantly higher today than we originally anticipated when your policy was priced. These higher claims costs are in part due to policyholders living longer and keeping their policies longer than originally anticipated. As a result, premiums need to be adjusted to ensure there is adequate funding to pay current and anticipated future claims. Our decision to increase premiums was not determined based upon the current economic environment. Please note that we requested a 55.000% rate increase and the Virginia Bureau of Insurance determined that a rate increase 55.000% was allowable under Virginia's regulation. For additional information regarding premium increases, please go to www.genworth.com/ltcpremiums.

And

> We plan to request at least 20% in additional premium increases over the next 2-4 years. Note that any future increases would first be subject to the review and approval of the Virginia Bureau of Insurance. We appreciate that premium increases can be difficult for our policyholders.

*Id.* at 1, 4.

Each time Genworth increased Mr. and Mrs. Crone's long-term care insurance premiums, Genworth gave Mr. and Mrs. Crone the ability to avoid the premium increase by either lowering their maximum daily benefit amount, or adjusting their benefit period, inflation protection option or elimination period. Ex. A at 1-2; Ex. B at 2, 9-10, 13-14;  Ex. C at 1-3. Genworth also gave Mr. and Mrs. Crone the ability to avoid paying any further premiums by opting for a paid-up policy

6

with benefits approximately equal to the total of premiums paid. Ex. A. at 2; Ex. B at 2; Ex. C at 3.

According to genworth.com/ltcpremium (which Genworth referenced in its November 29, 2019 correspondence to Mr. and Mrs. Crone), long-term care insureds who receive a premium increase notification can generally: (1) keep their current coverage by paying the increased premium; (2) avoid the premium increase by lowering their daily benefit amounts, shortening their benefit coverage periods, lengthening their elimination periods, decreasing their inflation protection, and/or canceling any benefit riders they may have purchased in connection with their long-term care insurance policies; or (3) avoid paying any further premiums by opting for a paid-up policy with benefits approximately equal to the total of premiums paid. LTC Insurance Premium Increases: What are my options?, Genworth Financial, Inc., https://www.genworth.com/customer-service/ltc-premiums/my-options.html (last visited Dec. 27, 2021).

        ii.     <u>Walter Leen</u>

Walter Leen is a Settlement Class member residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In 1996, Mr. Leen—while living in Massachusetts—purchased a Policy Form Series 7000AR (PCS I) LTCI policy with an effective date of coverage of January 16, 1996. Because Mr. Leen purchased his LTCI policy while living in Massachusetts, Mr. Leen's long-term care insurance policy is under the Massachusetts Division of Insurance's oversight.

On December 12, 2013, Genworth notified Mr. Leen that it was increasing his annual premium 10%, from $573.30 to $630.63. Ex. D at 1. In its December 12, 2013 correspondence notifying Mr. Leen of the premium increase, Genworth stated:

> The Massachusetts Department of Insurance has requested that we inform you that your policy would require a 165.000% premium increase for us to certify that no future rate increases would be anticipated under moderately

7

> adverse experience. However, because the approved rate increase is substantially below what is required, it is likely that we will be requesting additional rate increases and your premium will likely increase again in the future in accordance with the terms of the contract.

*Id.*

Genworth also gave Mr. Leen the ability to avoid the premium increase by lowering his maximum daily benefit amount or adjusting his benefit period, inflation protection option or elimination period. *Id.*

On or about October 11, 2020, Genworth notified Mr. Leen that it was increasing his annual premium 40% over the following three years. Ex. E at 1. In its October 11, 2020 correspondence notifying Mr. Leen of the premium increase, Genworth stated:

> Please note, your policy would require a 317.100% premium increase for us to certify that no future rate increases would be anticipated. Since the rate increase is substantially below that amount, it is likely we will be requesting additional rate increases. However, if that should happen, we will provide advance notification and your available options.

*Id.* at 2.

Genworth once again gave Mr. Leen the ability to avoid the premium increase by lowering his maximum daily benefit amount or adjusting his benefit period, inflation protection option or elimination period. *Id.* at 3-7. Genworth also gave Mr. Leen the options of (1) receiving a paid-up policy (meaning Mr. Leen would not have to pay additional premiums) with benefits of $55,992.44 (which equaled Mr. Leen's premiums paid to date); or (2) receiving a $27,996.22 payment and a paid-up policy with $27,996.22 of benefits. *Id.*

The October 11, 2020 correspondence also directed Mr. Leen to visit genworth.com/ltcpremiums "[f]or additional information regarding premium increases." *Id.* at 1.

iii.   Paul Lubell

Paul Lubell is a Settlement Class member residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In 2002, Mr. Lubell purchased a Policy Form Series 7030R (PCS II) long-term care insurance policy with an effective date of coverage of September 6, 2002.

Genworth notified Mr. Lubell that it planned to increase his LTCI policy premiums on July 4, 2014, July 1, 2015, July 1, 2016, June 30, 2019, and July 1, 2021. *See* Group Ex. F.

Each time Genworth increased Mr. Lubell's long-term care insurance premiums, Genworth gave Mr. Lubell the ability to avoid the premium increase by either lowering his maximum daily benefit amount, or adjusting his benefit period, inflation protection option or elimination period. *Id.* at 2, 4, 7, 10, 12, 14-15, 17-19. Genworth also gave Mr. Lubell the ability to avoid paying any further premiums by opting for a paid-up policy with benefits approximately equal to his total premiums paid. *Id.* at 2, 4, 7, 10, 15, 18.

The premium increase notifications Genworth sent Mr. Lubell on July 4, 2014, July 1, 2015, and July 1, 2016 each stated: "In addition, please note that in accordance with the terms of your policy, we reserve the right to change premiums and it is likely that your premium will increase again in the future." *Id.* at 1, 3, 6.

In its July 1, 2021 correspondence notifying Mr. Lubell about a 29.37% premium rate increase, Genworth stated:

> For policies subject to this rate increase, we began providing advance notice of the rate increase to policyholders in 04/2021. Please be aware that, at that time, we planned to request at least 89% in additional rate increases on your policy and policies like yours in the state where your policy was issued. The actual increases we seek may differ. For example, they may be higher or more numerous than the plans described above and any more recently updated plans. To see if our rate increase plans have changed you may register or log on to your account at genworth.com and go to the section entitled 'I want to'.

9

> Planned rate increases will take effect only as permitted by the applicable. state insurance department and state law. Please note, our ability to obtain needed future rate increases is important to Genworth Life Insurance Company's ability to pay future claims. The inability to obtain needed future rate increases may impair our ability to do so.

*Id.* at 14.

On Mr. Lubell's genworth.com account, Genworth states, "[p]lease note, as of 05/27/2021 we plan to request at least 89.6% in <u>additional</u> future premium rate increases on your policy and policies like yours in the state where your policy was issued." Ex. G at 2.

      iv.    <u>Bonnie Fontenot Nielson</u>

Bonnie Fontenot Nielson is a Settlement Class member residing at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In 1996, Mrs. Nielson—while living in Florida—purchased a Policy Form Series 7000N (PCS I) long-term care insurance policy with an effective date of coverage of May 13, 1996. Mrs. Nielson's policy is subject to the Florida Office of Insurance Regulation's oversight.

On March 6, 2016, March 7, 2019, March 25, 2020 and March 25, 2021, Genworth notified Mrs. Nielson that it was increasing her annual premium. Group Ex. H. Each time Genworth increased Mrs. Nielson's long-term care insurance premiums, Genworth gave Mrs. Nielson the ability to avoid the premium increase by either lowering her maximum daily benefit amount, or adjusting her benefit period, inflation protection option or elimination period. *Id.* at 2, 5, 9, 11, 15, 18-19. Genworth also gave Mrs. Nielson the ability to avoid paying any further premiums by opting for a paid-up policy with benefits approximately equal to her total premiums paid. *Id.* at 2, 5, 9, 11, 16, 18-19.

      v.    <u>Dennis Nielson</u>

Dennis Nielson is a Settlement Class member residing at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In 1996, Mr. Nielson—while living in Florida—purchased a Policy

Form Series 7000N (PCS I) long-term care insurance policy with an effective date of coverage of May 13, 1996. Mr. Nielson's policy is subject to the Florida Office of Insurance Regulation's oversight.

On March 6, 2016, March 7, 2019, March 25, 2020 and March 25, 2021, Genworth notified Mr. Nielson that it was increasing his annual premium. Group Ex. I. Each time Genworth increased Mr. Nielson's long-term care insurance premiums, Genworth gave Mr. Nielson the ability to avoid the premium increase by either lowering his maximum daily benefit amount, or adjusting his benefit period, inflation protection option or elimination period. *Id.* at 2, 5, 11-15. Genworth also gave Mr. Nielson the ability to avoid paying any further premiums by opting for a paid-up policy with benefits approximately equal to his total premiums paid. *Id.* at 2, 5, 7, 12, 15, 17.

The Objectors object to the proposed settlement on behalf of themselves and the Settlement Class as a whole.

Objectors' counsel intends to appear at the Final Approval Hearing.

### III.  Objections

The Objectors object to certification of the Settlement Class and to the settlement itself. "Regarding requirements for certification, a settlement class must meet the requirements for certification under Federal Rule of Civil Procedure 23." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 236–37 (S.D.W. Va. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "Thus, the named plaintiffs must meet the prerequisites of Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.* at 237 (citing *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003)).

Furthermore, a court may approve a proposed class-wide settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Because the Settlement Class fails to satisfy Federal Rule of Civil Procedure 23's certification requirements and the Plaintiffs have failed to show that the settlement itself is "fair, reasonable and adequate" under Rule 23(e)(2), the Court should deny final approval to the proposed settlement.

### A.     The Court should decertify the Settlement Class

Because the settlement class fails to satisfy Rule 23(a)'s commonality and typicality requirements, the Court should decertify the Settlement Class. Although "[a] district court 'has broad discretion in deciding whether to certify a class, … that discretion must be exercised within the framework of Rule 23.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996)). "Indeed, and especially in the settlement context, the judge must give the requirements for class certification 'undiluted, even heightened, attention.'" *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 555 (7th Cir. 2017) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). *See also Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (internal citation omitted); *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 236–37 (S.D.W. Va. 2005) (internal citations omitted).

A party seeking to certify a settlement class under Federal Rule of Civil Procedure 23(b)(3) must demonstrate that the putative settlement class satisfies "the numerosity, commonality, typicality, representativeness, predominance, and superiority requirements of both Rule 23(a) and (b)(3)." *Lienhart*, 255 F.3d at 146 (citing Fed. R. Civ. P. 23). *See also Berry* 807 F.3d at 608 (internal citation omitted).

Because the Settlement Class fails to satisfy Federal Rule of Civil Procedure 23(a)'s commonality and typicality requirements, the Court should decertify the Settlement Class.

      i.      The Settlement Class fails to satisfy Rule 23(a)(2)'s commonality requirement

Federal Rule of Civil Procedure 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal citation and quotation marks omitted). Class members' claims "must depend upon a common contention." *Id.* at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification ... [is] the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

In their complaint, Plaintiffs allege that Genworth failed to disclose certain and significant future premium rate increases it intended to impose on Settlement Class members' policies at the time it imposed modest premium rate increases. Plaintiffs allege that Genworth had a duty to disclose information regarding its future premium increase plans to insureds.

In their motion for preliminary settlement approval, Plaintiffs claim that "common issues include[] [1] whether Genworth's alleged partial disclosures created a duty to all Class members to make a full and adequate disclosure of Genworth's plans for future rate increases and its reliance on obtaining those increases to remain solvent; [and 2] whether Genworth breached that duty to all Class members." ECF No. 45 at 28.

However, at various points during the Class Period (January 1, 2012 to October 29, 2021), Genworth informed Diane Crone, Terry Crone, Walter Leen and Paul Lubell (and presumably all Maryland, Massachusetts, and Virginia insureds in the same class as them) of its intention to impose additional future premium rate increases on them at the time it increased their premiums.

13

For example, each time Genworth increased Walter Leen's premiums during the Class Period, it informed him (and presumably all members of the same policy class) of the increase it would need "to certify that no future rate increases would be anticipated" and that it would likely seek additional premium rate increases in the future.

Similarly, when Genworth increased Paul Lubell's LTCI premiums 29.37% in July 2021, it notified Mr. Lubell that it planned to seek at least 89% in additional rate increases on his policy and policies like his in the State of Maryland.

Based on Genworth's representations to Diane and Terry Crone, Walter Leen and Paul Lubell regarding certain and significant future premium rate increases it intended to impose on them at the time it imposed more modest premium rate increases, Genworth failed to engage in standardized conduct toward the Settlement Class. Genworth also seemingly provided the supposedly missing/omitted information at the heart of Plaintiffs' complaint to some Settlement Class members and not others. Thus, whether Genworth had a duty to disclose additional information about its intended future premium rate increases and whether Genworth satisfied that duty will vary by class member. Therefore, the Settlement Class members' claims do not depend on a "common contention" that is "capable of classwide resolution." As such, the Settlement Class fails to satisfy Rule 23(a)(2)'s commonality requirement.

      ii.     Plaintiffs fail to satisfy Rule 23(a)(3)'s typicality requirement

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arise[s] from the same event or practice or course of conduct that gives rise to the claims of other class members and [plaintiffs'] claims are based on the same legal theory." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Even though some factual variations may not

defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal citation and quotation marks omitted).

"Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

As discussed above, Genworth failed to engage in a standardized course of conduct regarding the premium rate increases it imposed on Settlement Class members during the Class Period. Genworth notified some Settlement Class members of its need for additional premium rate increases and its intent to increase their premiums in the future and not others. Thus, the Plaintiffs' claims do not arise from a uniform course of conduct. Because Genworth gave at least some Settlement Class members the information that Plaintiffs claim Genworth universally withheld, Plaintiffs fail to satisfy Rule 23(a)(3)'s typicality requirement.

Because the Settlement Class fails to satisfy Rule 23(a)'s commonality and typicality requirements, the Court should decertify the Settlement Class.

> **B.     Even if the Court declines to decertify the Settlement Class, it should nonetheless deny final approval because Plaintiffs have failed to demonstrate that the settlement is fair, reasonable and adequate.**

"When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483–84 (4th Cir. 2020) (internal citation omitted). "And the court may approve the proposed settlement 'only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate.'" *Id.* at 484 (quoting Fed. R. Civ. P. 23(e)(2)). Any settlement that provides "meaningless relief to the putative class" is not "fair, reasonable, and adequate." *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d at 556.

Because Genworth has already disclosed its plans to seek future premium rate increases to Massachusetts, Maryland and Virginia LTCI policyholders (such as Walter Leen, Paul Lubell, Diane Crone and Terry Crone), the "Special Election Letter" fails to provide such insureds any meaningful benefit. Massachusetts, Maryland and Virginia Settlement Class members who do not opt out and fail to select one of the Special Election Options will receive no benefit in exchange for releasing any claims they have against Genworth related to its past premium rate increases.

Furthermore, Settlement Class members who select Special Election Option I.A.1 (the first paid-up benefit option) fail to receive any benefit greater than what is already available to them.

Any time Genworth imposes class-wide premium rate increases on LTCI policyholders, it gives them three options: (1) pay the increased premiums to maintain the same level of benefits; (2) pay reduced premiums in exchange for reduced benefits; or (3) elect a limited "non-forfeiture" option and pay no further premiums. *See* LTC Insurance Premium Increases: What are my options?, Genworth Financial, Inc., https://www.genworth.com/customer-service/ltc-premiums/my-options.html (last visited Dec. 27, 2021). Such LTCI policyholders can reduce their benefits by lowering their benefit amounts, shortening their benefit coverage periods, lengthening their elimination periods, decreasing their inflation protection and/or canceling any riders they may have purchased. *Id.* The limited "non-forfeiture" option—under which insureds receive a paid-up policy with benefits approximately equal to the total of premiums paid—provides benefits of equal value to those provided by Special Election Option I.A.1. Thus, Settlement Class members could receive benefits equal to those the first paid-up benefit option provides (without having to release any claims against Genworth) by simply waiting until Genworth increases their premiums and selecting the limited "non-forfeiture" option.

Furthermore, it is at best unclear whether the other Special Election Options provide Settlement Class members any meaningful benefit. For example, the reduced benefit options and the "stable premium options" offer reduced premiums and damages payments in exchange for reduced daily benefit amounts, reduced benefit periods and/or reduced inflation protection. However, it is impossible to calculate the damages payment any Settlement Class member would receive because said payment depends on the class member's post-benefit reduction premium (which the Special Elections Options fail to disclose). Additionally, because the reduced benefit and "stable premium" Special Election Options fail to disclose the amount of Settlement Class members' post-benefit reduction premiums, Settlement Class members have no way of assessing the amount of money they are saving relative to the amount of benefits they are giving up as part of the settlement. Therefore, Settlement Class members cannot determine which (if any) reduced benefit and "stable premium" Special Election Options provide them any meaningful relief.

Because the Special Election Letter and Special Election Options are impossible to evaluate and/or fail to provide Settlement Class members with any benefit not otherwise available to them, the proposed settlement is not "fair, reasonable and adequate."

## IV. Conclusion

For all of the foregoing reasons, Settlement Class members and Objectors, Diane Crone, Terry Crone, Walter Leen, Paul Lubell, Bonnie Fontenot Nielson and Dennis Nielson, respectfully request that this Court decertify the Settlement Class and deny final approval of the proposed settlement.

Dated: December 28, 2021          Respectfully submitted,

By: ___*Diane Crone*___
     Diane Crone (Dec 28, 2021 16:17 EST)
     Diane Crone, A Settlement Class Member

By: _____
    Terry Crone (Dec 28, 2021)
    Terry Crone, A Settlement Class Member

By: _____
    Walter Leen, A Settlement Class Member

By: _____
    Paul Lubell, A Settlement Class Member

By: _____
    Bonnie Fontenot Nielson, A Settlement
    Class Member

By: _____
    Dennis Nielson, A Settlement Class Member


By: /s/ Andrew P. Sherrod
    Andrew P. Sherrod
    VSB No. 45854
    HIRSCHLER FLEISCHER,
    A PROFESSIONAL CORPORATION
    The Edgeworth Building
    2100 East Cary Street
    Post Office Box 500
    Richmond, Virginia 23218-0500
    Telephone: 804.771.9500
    Facsimile: 804.644.0957
    asherrod@hirschlerlaw.com

    Robert R. Duncan (IL Bar No. 6277407)
    (pro hac vice motion to be filed)
    James H. Podolny (IL Bar No. 6321307)
    (pro hac vice motion to be filed)
    Duncan Law Group, LLC
    161 N. Clark, Suite 2550
    Chicago, IL 60601
    Phone: (312) 202-3283
    Fax: (312) 202-3284
    Email: rrd@duncanlawgroup.com
           jp@duncanlawgroup.com

Thomas C. Cronin (IL Bar No. 6204065)
(pro hac vice motion to be filed)
Cronin & Co., Ltd.
120 North LaSalle Street
20th Floor
Chicago, IL 60602
Phone: (312) 500-2100
Email: tcc@cronincoltd.com

Counsel for Objectors

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the 28th day of December, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record. The Settlement Administrator will be served by regular U.S. mail.

/s/ Andrew P. Sherrod
Andrew P. Sherrod
VSB No. 45854
HIRSCHLER FLEISCHER,
A PROFESSIONAL CORPORATION
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  804.771.9500
Facsimile:  804.644.0957
asherrod@hirschlerlaw.com